GULL LABORATORIES, INC., a Utah
Corporation, Plaintiff and
Respondent,

v.

LOUIS A. ROSER COMPANY, a Utah
Corporation, Defendant and Appellant.

No. 15721.

Supreme Court of Utah.

Dec. 27, 1978.

Raymond M. Berry of Snow, Christensen & Martineau, Salt Lake City, for defendant and appellant.

Glen M. Richman, Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant appeals from a judgment based on his alleged negligence in causing the loss of a laboratory serum.

In February, 1976, plaintiff corporation operated an experimental laboratory which was engaged in producing diagnostic products and services. A small walk-in refrigeration unit malfunctioned, and defendant was called for repair services. When defendant's lead serviceman (one Meyers) arrived, he was taken to the cooler by an employee of plaintiff and commenced repairs. Some of the flasks and vials inside the cooler were moved so as to clear a work area and the repairs were made. Shortly after Meyers left, it was discovered that an uncapped flask which contained a conjugate of a complex serum [1] had tipped over, its contents having spilled down the side of the wall and onto the floor. Sometime during the week following Meyer's service call, defendant was informed of the spillage and that plaintiff intended to hold defendant responsible. Shortly thereafter, a representative of defendant's insurance company met with one Dr. Wentz, plaintiff's director and principle stockholder, and prepared a three-page estimate of what it would cost to reproduce the conjugate. (This was admitted as Exhibit D–16 at trial, hereinafter referred to as "estimate.") The cost of reproduction was estimated to be $38,-308.75, including $14,400.00 as laboratory labor required for serum processing. At trial, plaintiff was permitted to introduce Exhibit P–13 (hereinafter "summary"), which purported to represent the *actual* cost of reproducing the lost conjugate. This figure was $65,197.00 which included

$62,400.00 as the costs of labor required for processing. The exhibit was admitted over defendant's objection that there was no proper foundation laid and further that the summary of plaintiff's records was in violation of the best-evidence rule. Plaintiff explained that the disparity in the amount allocated for laboratory processing costs in the two exhibits was due to plaintiff's inability to reproduce an identical conjugate caused by the unavailability of a key antigen component. The jury returned a special verdict finding total damages to be $65,197.00 and that plaintiff was 30 percent negligent and defendant 70 percent negligent in causing the loss. Judgment for $45,637.90 plus costs was entered against defendant, who now appeals.

In its request for a new trial,[2] defendant raises several points on appeal, to wit: (1) The court committed prejudicial error in receiving Exhibit P–13 (summary) in evidence; (2) Ordinary prudence could not have guarded against the receipt of Exhibit P–13; [3] (3) The evidence is insufficient to justify the verdict; (4) The damages awarded were excessive and unjustified upon the evidence; and (5) The court committed error in law in ruling on admissibility of evidence. We need only address the problem raised by this last point (5) as it is dispositive of the matter before us.

The following testimony was elicited at trial:

Q. Dr. Wentz, I had [sic] you what has been marked as Plaintiff's Exhibit P–13 and ask you if you can identify that?

A. This is an itemizing [sic] of the costs to reproduce the conjugate based on company records as to costs incurred.

Q. You call them "company records," are they your records?

A. Yes.

Q. And who prepared the items on Exhibit P–13?

---

1. The conjugate was globulin prepared from an animal serum, intended to be used for diagnosing viral diseases caused by the Herpes virus.

2. Rule 59(a), U.R.C.P.

3. This point is basically that defendant was surprised by the offer of the summary into evidence and that its admission could not be reasonably anticipated.

A. These were prepared by myself.

Q. And what were you referring to when you prepared those items and made those computations?

A. I took into consideration all facets that dealt specifically with remaking this conjugate.

Q. Were those obtained from your business records?

A. Yes, they were.

Q. And the first item you have on there is what?

A. MR. BERRY: Your Honor, I object on the ground there is no proper foundation laid for the admission of this exhibit.

THE COURT: Have you shown this exhibit to counsel?

MR. RICHMAN: Yes, he has a copy.

MR. BERRY: Seems to me like his books and records would be the best evidence of whatever it cost, if that's what it's intended to prove.

THE COURT: Is this a summation of what is on the books and records?

MR. RICHMAN: Part of the books and records he kept himself.

MR. BERRY: I don't think it's on the books and records, your Honor. I haven't seen it on the books.

THE COURT: Overruled. That will be subject to cross-examination, and I'll let him answer.

    \*     \*     \*     \*     \*     \*

MR. BERRY: Your Honor, I object to P–13 as not being the best evidence of the books and move his answer be stricken as not responsive as to showing that he had information firsthand on which he could make this summary.

THE COURT: Based on that object [sic] I'll overrule it; the exhibit will be admitted.

■ Records made in the regular course of a business are generally admissible as

exceptions to the hearsay rule.[4] However, *summaries* of business records are only admissible when the requirements of Rule 70, U.R.E, have been complied with. That rule specifically provides that no evidence other than the writing itself is admissible except "when the original consists of numerous accounts or other documents which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole."[5] Furthermore, if a summary is to be admitted, "the original shall be made available to the opponent for examination or copying, or both, at a reasonable time and place; and the judge may order that the originals be produced in court."[6]

This Court has interpreted these provisions as follows:

It has been held, and we believe the ruling to be a salutary and expedient one, that where original book entries, documents or other data are so numerous, complex or cumbersome that they cannot be conveniently examined by the fact trier, or where it would materially aid the court and the parties in analyzing such material, that a competent person who has made such examination may present such evidence. *This is subject to the limitation that the evidence must be shown to be developed from records, books, or documents, the competency of which has been established, the records must be available for examination by the opposing parties, and the witnesses subject to cross-examination concerning such evidence.* [Emphasis added.][7]

■ In the instant case, not only was there insufficient foundation laid as to the cumbersomeness or unavailability of plaintiff's books,[8] but the original records were not even made available for examination by the opposing party. Plaintiff offered to supply the original records only if subpoe-

---

**4.** Rule 63(13), U.R.E.

**5.** Rule 70(1)(f), U.R.E.

**6.** Rule 70(2), U.R.E.

**7.** *Sprague v. Boyles Bros. Drilling Co.*, 4 Utah 2d 344, 294 P.2d 689 (1956).

**8.** Neither was there testimony establishing how the original records were made, i. e., regularity of making entries, accounting procedures, etc.

naed by the court. To require defendant to carry the burden of securing the original documents distorts the purpose and intention of the use of summaries. The party who offers the summary into evidence must carry the burden of making available the records from which the summary was taken to the satisfaction of the other parties and the court. Because plaintiff failed to sustain its burden, the trial court should not have admitted the evidence.

Having determined that the court erred in admitting the evidence, we must now decide whether a new trial is warranted. Generally, a jury verdict will only be upset where the error committed was so substantial and prejudicial that there is a reasonable likelihood that the result would have been different in the absence of such error.[9] In the instant case, the damages found by the jury are exactly as claimed in the inadmissible summary; hence, we are compelled to conclude that the jury relied on the summary in making its award. For these reasons the judgment is reversed and the case is remanded for a new trial. Costs to defendant.

ELLETT, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.

**9.** *Brunson v. Strong,* 17 Utah 2d 364, 412 P.2d 451 (1966); *Hales v. Peterson,* 11 Utah 2d 411, 360 P.2d 822 (1961).