**2013 UT App 146**

# THE UTAH COURT OF APPEALS

SUNRIDGE DEVELOPMENT CORPORATION AND *SUNRIDGE ENTERPRISES, LLC*,
Plaintiffs, *Appellant*, and *Cross-appellee*,

*v.*

RB&G ENGINEERING, INC.,
Defendant, Appellee, and Cross-appellant.

Opinion
No. 20111049-CA
Filed June 13, 2013

Fourth District, American Fork Department
The Honorable Christine S. Johnson
No. 070100134

Stephen Quesenberry and Jessica Griffin Anderson,
Attorneys for Appellant and Cross-appellee
Craig C. Coburn, Lincoln Harris, and
Zachary E. Peterson, Attorneys for Appellee and
Cross-appellant

JUDGE J. FREDERIC VOROS JR. authored this Opinion,
in which JUDGE WILLIAM A. THORNE JR. concurred. JUDGE
CAROLYN B. MCHUGH concurred in the result.

VOROS, Judge:

¶1     Sunridge Enterprises, LLC, appeals the trial court's entry of summary judgment in favor of RB&G Engineering, Inc. (RB&G). We affirm.[1]

---

1. We are puzzled by the continued involvement of Sunridge Development Corporation as a party in this case. All claims asserted by Sunridge Development were dismissed by 2006, and the only claim that Sunridge Development appealed was rejected

(continued...)

BACKGROUND

¶2 Sunridge Enterprises and Sunridge Development Corporation sued RB&G for breach of contract and negligence. The facts of the underlying suit are set out in previous decisions issued by this court and our supreme court. *See Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*, 2008 UT App 29, 177 P.3d 644, *rev'd*, 2010 UT 6, 230 P.3d 1000. On remand from the supreme court, the trial court ruled that Sunridge Development had assigned all interest in the underlying contract with RB&G to Sunridge Enterprises. RB&G then moved for summary judgment on the ground that Sunridge Enterprises could not prove damages. By the time the court decided the motion, the sole remaining claim was a claim by Sunridge Enterprises for lost profits from fourteen additional housing units that it was allegedly unable to build due to RB&G's failure to correctly identify fault lines. The trial court granted summary judgment in favor of RB&G and dismissed the case. Sunridge Enterprises appeals the dismissal of its claim, and RB&G cross-appeals the trial court's ruling regarding the assignment.

ISSUES AND STANDARDS OF REVIEW

¶3 First, Sunridge Enterprises contends that the trial court should have reopened discovery because Sunridge Enterprises did not have an opportunity to conduct full discovery on its claims. This contention involves a challenge to the trial court's discovery ruling and its underlying factual findings regarding the extent to which discovery had been conducted. We review a trial court's

---

1. (...continued)

by the supreme court in 2010. *See Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*, 2010 UT 6, ¶¶ 26–30 & n.8, 230 P.3d 1000. In the present appeal, the notice of appeal lists Sunridge Development as an appellant along with Sunridge Enterprises. However, Sunridge Development does not challenge any trial court ruling directed to it. Therefore, even if Sunridge Development were properly before us as a party, it has abandoned any appeal.

factual findings for clear error, *State v. Pinder*, 2005 UT 15, ¶ 20, 114 P.3d 551 (citing Utah R. Civ. P. 52(a)), and we review its ultimate denial of a request for additional time to conduct discovery for an abuse of discretion, *Reperex, Inc. v. May's Custom Tile, Inc.*, 2012 UT App 287, ¶ 11, 292 P.3d 694.

¶4 Second, Sunridge Enterprises contends that genuine issues of material fact preclude granting summary judgment in favor of RB&G. On appeal, we "review[] a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).[2]

ANALYSIS

I. Request To Reopen Discovery

¶5 Sunridge Enterprises contends that the trial court should have allowed it additional time to conduct discovery on the issue of damages after the supreme court remanded the case. The trial

---

2. Regarding RB&G's cross-appeal, RB&G does not seek to alter the trial court's final judgment dismissing the case. "Appellees need to cross-appeal only when they wish to attack a judgment of a trial court for the purpose of enlarging their own rights or lessening the rights of their opponent. If they wish to uphold the trial court's ruling on grounds that were raised but rejected below, a cross-appeal is not necessary." *Nova Casualty Co. v. Able Constr., Inc.*, 1999 UT 69, ¶ 7, 983 P.2d 575 (citation and internal quotation marks omitted). Because RB&G prevailed below and would have prevailed even if the trial court had ruled that no assignment had taken place, RB&G's cross-appeal is more accurately characterized as an argument to affirm on alternate grounds. Given our resolution of this appeal, we need not address RB&G's argument.

court rejected this request, stating, "[Sunridge] Enterprises is incorrect in its assertion that discovery has not been permitted on its claim for the lost units. . . . [Sunridge] Enterprises enjoyed a full opportunity to participate in discovery, and to produce any admissible evidence in order to advance its claim of damages for the lost units."[3]

¶6 Sunridge Enterprises challenges the trial court's finding that it had the opportunity to fully conduct discovery on its claim for damages for the lost units. Sunridge Enterprises states that discovery was not closed until "the judge's ruling, closing discovery in [February] 2006," five months after Sunridge Enterprises had been dismissed. Sunridge Enterprises argues that the resulting denial of its request was an abuse of discretion because the nature of the litigation had changed due to the intervening trial court and appellate court decisions in this case. Therefore, Sunridge Enterprises argues, it should now be given an opportunity to complete discovery pertinent to its newly revived claim.

¶7 We disagree with Sunridge Enterprises' characterization of the record. Discovery appears to have been completed on January 11, 2005. On January 13, 2005, Sunridge Enterprises certified its readiness for trial and requested a trial date. Rather than proceeding to trial, however, Sunridge Enterprises and Sunridge Development stipulated to RB&G's request to extend the deadline to file dispositive motions. While Sunridge Enterprises was dismissed as a party on summary judgment in September 2005, a portion of Sunridge Development's claims survived summary judgment at that time. However, we agree with the trial court that

---

3. We agree with Sunridge Enterprises that the trial court's characterization of its ruling as based on law of the case was inapt. Rather than applying law of the case, the court merely enforced long-past procedural deadlines. In any event, the court's possible mischaracterization of its rationale does not constitute an abuse of discretion in this case.

the record in this case "does not reflect ongoing discovery after [Sunridge] Enterprises was dismissed." Sunridge Enterprises' reference to a 2006 ruling closing discovery is also inaccurate. In February 2006, Sunridge Development and RB&G simply stated to the court that discovery was in fact complete. Sunridge Enterprises has thus failed to demonstrate clear error in the trial court's finding that it had "a full opportunity to participate in discovery" relating to its claim for lost profits.

¶8　　The trial court acted within its discretion in denying Sunridge Enterprises' request for additional discovery. Sunridge Enterprises certified its readiness for trial after discovery was complete and well before it was initially dismissed on summary judgment. If Sunridge Enterprises had proceeded to trial in 2005 as it certified it was ready to do, it would have been required to prove its damages at that time because proof of the amount of damages is a crucial element of any breach of contract claim, *see Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388. The 2005 dismissal and its subsequent reversal on appeal do not alter the situation. Sunridge Enterprises asserted a breach of contract claim jointly with Sunridge Development, both entities certified their readiness for trial, the trial court dismissed Sunridge Enterprises, the supreme court reversed, and Sunridge Enterprises has reasserted the claim on remand. Sunridge Enterprises has identified no distinction between the breach of contract claim that it originally asserted and the claim before the trial court on remand.

¶9　　Furthermore, Sunridge Enterprises has not adequately explained why additional discovery was needed; all evidence of damages would be within the control of Sunridge Enterprises, not RB&G. Indeed, counsel for Sunridge Enterprises stated in oral argument that it sought a discovery extension for the purpose of supplementing its discovery responses to RB&G. We see no abuse of discretion in the trial court's denial of a request for additional discovery to obtain evidence in the exclusive control of the

requesting party when the request was made six years after discovery was complete and that party certified readiness for trial.[4]

## II. Summary Judgment

¶10    Sunridge Enterprises' next contention on appeal is that the trial court erred by entering summary judgment in favor of RB&G. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

¶11    "A summary judgment movant, on an issue where the nonmoving party will bear the burden of proof at trial, may satisfy its burden on summary judgment by showing, by reference to 'the

---

4. Although we cannot be certain due to the lack of a transcript in the record on appeal, it appears that Sunridge Enterprises did not style its oral request for additional discovery as a rule 56(f) motion. *See generally* Utah R. Civ. P. 56(f). "Rule 56(f) of the Utah Rules of Civil Procedure provides that a party opposing summary judgment may submit an affidavit stating the reasons why he is presently unable to present evidentiary affidavits essential to support his opposition to summary judgment." *Downtown Athletic Club v. Horman*, 740 P.2d 275, 278 (Utah Ct. App. 1987). The trial court did not mention rule 56(f), nor has either party addressed the rule on appeal. However, Sunridge Enterprises' request was in substance a rule 56(f) motion to continue summary judgment for the purposes of conducting further discovery. Yet Sunridge Enterprises failed to meet the requirements of rule 56(f) because it did not "submit an affidavit stating the reasons why [it was] presently unable to present evidentiary affidavits essential to support [its] opposition to summary judgment." *See id.*; *see also* Utah R. Civ. P. 56(f). Therefore, regardless of how we characterize Sunridge Enterprises' motion for additional discovery, we see no abuse of discretion in the trial court's denial of it.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' that there is no genuine issue of material fact." *Orvis v. Johnson*, 2008 UT 2, ¶ 18, 177 P.3d 600 (quoting Utah R. Civ. P. 56(c)). "Upon such a showing, whether or not supported by additional affirmative factual evidence, the burden then shifts to the *nonmoving* party, who 'may not rest upon the mere allegations or denials of the pleadings,' but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Utah R. Civ. P. 56(e)). "The allegations of a pleading or factual conclusions of an affidavit are insufficient to raise a genuine issue of fact." *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 12, 192 P.3d 858 (citation and internal quotation marks omitted).

¶12 Furthermore, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Utah R. Civ. P. 56(e). "A plaintiff's failure to present evidence that, if believed by the trier of fact, would establish any one of the [elements] of the prima facie case justifies a grant of summary judgment to the defendant." *Stevens-Henager College v. Eagle Gate College*, 2011 UT App 37, ¶ 14, 248 P.3d 1025 (alteration in original) (citation and internal quotation marks omitted).

¶13 Sunridge Enterprises claims that the trial court erred by ruling that it had not provided sufficient evidence to create a genuine issue of material fact as to the amount of damages. To succeed on a breach of contract claim, "[a] plaintiff is required to prove both the fact of damages and the amount of damages." *Id.* ¶ 16. To prove the amount of damages, the plaintiff must produce "evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages." *TruGreen Cos. v. Mower Bros., Inc.*, 2008 UT 81, ¶ 15, 199 P.3d 929 (citation and internal quotation marks omitted). "[M]ere conclusions and conjecture" will not suffice. *Stevens-Henager College*, 2011 UT App 37, ¶ 29. Rather, the plaintiff must provide "supporting evidence" from which the factfinder may derive a

reasonable estimate of the amount of damages. *See Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986) (per curiam); *Stevens-Henager College*, 2011 UT App 37, ¶ 28.

¶14    When the alleged damages include lost profits, the plaintiff must prove *net* loss. *See Stevens-Henager College*, 2011 UT App 37, ¶¶ 26–28; *see also Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985). "Net profits are determined by computing the difference between the gross profits and the expenses that would be incurred in acquiring such profits." *Sawyers*, 722 P.2d at 774. Therefore, "[r]easonable certainty requires more than a mere estimate of net profits. In addition to proof of gross profits, there must generally be supporting evidence of overhead expenses, or other costs of producing income from which a net figure can be derived." *Id.*

¶15    In the present case, Sunridge Enterprises argues that it would have been able to build and sell fourteen additional housing units had RB&G correctly identified certain fault lines. Sunridge Enterprises identifies five documents that it says provide evidence of damages sufficient to survive summary judgment. First, its response to RB&G's interrogatories states, "Sunridge has estimated losses based on the actual lots that were lost, [and] the profit on units not built based on actual contract and sales prices for the specific units that would have been built . . . ." Second, its supplemental initial disclosure calculates the number of lost units then concludes that it has "an actual loss on [its] books from that project in the amount of $1,388,482.73." Third, a sample closing statement shows the sales price Sunridge Enterprises received from the sale of a comparable unit. Fourth, Stephen Stewart, the principal of Sunridge Enterprises, identified in his deposition the loss per unit as $75,570 and the total loss as roughly $1,057,000. Finally, Stewart produced an affidavit concluding that the total loss was $1,057,983.41.

¶16    RB&G argues that this evidence is insufficient to survive summary judgment. We agree. The facts Sunridge Enterprises

points to are insufficient to create a genuine issue of material fact because they do not include any admissible evidence as to net loss, *see Bowers v. Call*, 2011 UT App 143, ¶ 2, 257 P.3d 433; *Stevens-Henager College*, 2011 UT App 37, ¶¶ 26–28, and the supporting evidence is insufficient to "permit the trier of fact to determine with reasonable certainty the amount of lost net profits," *Sawyers*, 722 P.2d at 774; *see also TruGreen*, 2008 UT 81, ¶ 15.

¶17    "[I]nadmissible evidence cannot be considered in ruling on a motion for summary judgment." *See D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989). Thus, "[i]f a motion for summary judgment is supported by affidavit, or other admissible evidence, the nonmoving party must submit *admissible evidence* and demonstrate that there is a genuine issue of material fact precluding summary judgment." *Bowers*, 2011 UT App 143, ¶ 2 (emphasis added).

¶18    One document Sunridge Enterprises relied on below was a Cost/Loss Analysis prepared by Stewart and four other individuals. The Cost/Loss Analysis listed the building cost for four representative buildings, the sales price for the units in those buildings, an average unit cost, an average unit sales price, and, using the averages, a per-unit loss and total loss for the fourteen unbuilt units. The Cost/Loss Analysis was presented as a summary of voluminous documentary evidence under Utah Rule of Evidence 1006. However, the trial court ruled that the Cost/Loss Analysis was inadmissible because it did not meet the requirements of rule 1006.

¶19    Rule 1006 is an exception to rule 1002, the best evidence rule. *See International Harvester Credit Corp. v. Pioneer Tractor & Implement, Inc.*, 626 P.2d 418, 422 (Utah 1981).[5] The best evidence

---

5. *International Harvester Credit Corp. v. Pioneer Tractor & Implement, Inc.*, 626 P.2d 418 (Utah 1981), and other cases cited herein, analyzed rule 70, a prior but substantively similar version of rule

(continued...)

rule states, "An original writing, recording, or photograph is required in order to prove its content, except as otherwise provided in these rules . . . ." Utah R. Evid. 1002. Rule 1006 allows a litigant to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." *Id.* R. 1006. The rule further requires the proponent to "make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time or place. And the court may order the proponent to produce them in court." *Id.*

¶20    To admit a summary under rule 1006, the underlying records must be "'so numerous, complex or cumbersome that they cannot be conveniently examined by the fact trier, or . . . it would materially aid the court and the parties in analyzing such material.'" In addition, "'the records must be available for examination by the opposing parties, and the witnesses subject to cross-examination concerning such evidence.'" *Gull Labs., Inc. v. Louis A. Roser Co.*, 589 P.2d 756, 758 (Utah 1978) (quoting *Sprague v. Boyles Bros. Drilling Co.*, 294 P.2d 689, 694 (Utah 1956)); *see also* Utah R. Evid. 1006; *Trolley Square Assocs. v. Nielson*, 886 P.2d 61, 67 (Utah Ct. App. 1994). Furthermore, a summary "cannot be used as a cover for bringing inadmissible hearsay evidence into the courtroom." *International Harvester*, 626 P.2d at 422. Thus, the proponent of a summary must also show that the underlying records are admissible, which typically requires a showing that the records qualify under the business records exception to the hearsay rule. *See id.*; *Trolley Square Assocs.*, 886 P.2d at 67. *See generally* Utah R. Evid. 803(6). Finally, to make the required showings, the proponent of a summary must provide a competent witness to establish the necessary foundation for the summary and the

---

5. (...continued)
1006. As this court has noted before, cases applying the prior rule remain relevant. *See Trolley Square Assocs. v. Nielson*, 886 P.2d 61, 67 n.6 (Utah Ct. App. 1994).

underlying records. *See International Harvester*, 626 P.2d at 422; *Gull Labs.*, 589 P.2d at 758 & n.8; *Trolley Square Assocs.*, 886 P.2d at 67.

¶21 The trial court found that Sunridge Enterprises failed to make available the records underlying the Cost/Loss Analysis. Sunridge Enterprises provided supporting documentation of the gross revenue figures on the summary, consisting "solely of closing statements and related documentation." But the court ruled that "the *costs* detailed on [the Cost/Loss Analysis] are without support of any kind. The records themselves have not been produced." (Emphasis added.) Sunridge Enterprises does not challenge this ruling on appeal. Therefore, the Cost/Loss Analysis is inadmissible, and Sunridge Enterprises may not rely on it to show that a genuine issue of material fact exists. *See Bowers v. Call*, 2011 UT App 143, ¶ 2, 257 P.3d 433.

¶22 Sunridge Enterprises argues, however, that the trial court focused so much on the Cost/Loss Analysis in its summary judgment ruling that it overlooked other admissible evidence of damages. Sunridge Enterprises argues that even if the Cost/Loss Analysis is inadmissible, Stewart provided information regarding the lost profits from the fourteen units in his deposition and affidavit. RB&G responds that Stewart's deposition and affidavit may not be used to circumvent the requirements of rule 1006.

¶23 Although a summary under rule 1006 "should be reduced to writing," *International Harvester*, 626 P.2d at 422, a witness with independent firsthand knowledge of facts may testify even if those facts also appear in an inadmissible writing, recording, or photograph, *see* 2 Kenneth S. Broun et al., *McCormick on Evidence* § 234 at 135, 138 (7th ed. 2013); *see also Shurtleff v. Jay Tuft & Co.*, 622 P.2d 1168, 1174 (Utah 1980) (noting that even though a summary was properly excluded at trial, the witness who prepared the summary was allowed to testify as to the facts reflected in the summary and use the exhibit to refresh her memory). But if the witness's testimony "depends upon the writing, not firsthand knowledge *acquired separate[ly] from the writing*," the testimony is inadmissible. R. Collin Mangrum & Dee Benson, *Mangrum &*

*Benson on Utah Evidence* 842–43 (2012–2013 ed.) (emphasis added); *see also* Utah R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *id.* R. 1002 ("An original writing, recording, or photograph is required in order to prove its content, except as otherwise provided in these rules . . . .").

¶24　If a witness lacks independent personal knowledge of a fact, allowing that witness to "read in material contained in exhibits that had been previously denied admission" would "circumvent[] the very rule of law provided in Rule [1002]." *Intermountain Farmers Ass'n v. Fitzgerald*, 574 P.2d 1162, 1165–66 (Utah 1978) (holding that defendant should not have been allowed to read from general revenue records and other evidence previously ruled inadmissible); *cf. Stephans v. State*, 262 P.3d 727, 731–33 (Nev. 2011) (holding that a witness could not testify to the value of a stolen item because the witness "[did] not appear to have any knowledge of value apart from [viewing] the price tag"). "In sum, any witness with knowledge of facts that exist independent of the contents of a writing, recording, or photograph may testify without raising an issue under Rule 1002. . . . But where the witness has knowledge only of the contents of such an item, testimony may be excluded under Rule 1002." 31 Charles Alan Wright et al., *Federal Practice and Procedure: Evidence* § 7184 & n.45 at 391–92 (1st ed. 2000) (discussing the substantially similar federal equivalent to Utah Rule of Evidence 1002).

¶25　We question whether Stewart had personal knowledge of the net loss independent of the inadmissible summary. In his deposition, Stewart identified the loss per unit as $75,570 and the total loss as roughly $1,057,000. However, Stewart identified these figures using the Cost/Loss Analysis. Stewart stated in his deposition that he participated in the preparation of the Cost/Loss Analysis in some unspecified way along with four other individuals. Stewart's involvement in the preparation of the summary may have given him personal knowledge sufficient to lay foundation for the underlying business records and the summary.

But it appears that Stewart merely testified based on the contents of the inadmissible summary, and not based on his independent knowledge of the facts reflected in the summary. Allowing Sunridge Enterprises to raise a genuine issue of material fact through such testimony would circumvent the requirements of rules 1002 and 1006 by placing the contents of the summary before the court through other means. *See* Utah R. Evid. 1002; *id.* R. 1006; *Intermountain Farmers*, 574 P.2d at 1165.

¶26    However, even if Stewart's conclusions as to lost income are accepted, Stewart's deposition testimony is insufficient to create a genuine issue of material fact, because Stewart provides no basis for calculating net loss. *See Stevens-Henager College*, 2011 UT App 37, ¶¶ 26–29. The fact that the number Stewart identified in his deposition reflects *net* loss can only be gleaned by reference to the inadmissible Cost/Loss Analysis, not from the deposition testimony alone. Stewart discusses costs in general terms but never provides any figures, either for the total cost of building the additional units or for building an average unit. Nor does Sunridge Enterprises cite any passage where he states that the figures he identified as lost income took costs into account, let alone explain what those costs might have included. Rather, the testimony simply provides an unsubstantiated and unexplained conclusion as to lost income. *See id.* ¶ 29. Stewart's deposition testimony thus fails to provide any "supporting evidence of overhead expenses, or other costs of producing income from which a net figure can be derived." *See Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986) (per curiam). Without such information, Sunridge Enterprises has not "provided sufficient information for the jury to . . . calculate the amount of damages" without speculation. *See Stevens-Henager College*, 2011 UT App 37, ¶ 28.

¶27    The evidence presented in Stewart's affidavit fails to demonstrate a genuine issue of material fact for similar reasons. Stewart's affidavit avers, among other things, that the total loss from Sunridge Enterprises' not being able to build the fourteen

units was $1,057,983.41. Although the affidavit recites that it is made on personal knowledge, nothing suggests that Stewart had personal knowledge of this figure *separate from the inadmissible summary*. The figure provided in the affidavit matches to the penny the figure provided in the Cost/Loss Analysis, and no information is provided in the affidavit to suggest that Stewart has personal knowledge independent of the summary of how that net figure was derived or of the facts necessary to calculate it. The affidavit must set forth "such facts as would be admissible in evidence." Utah R. Civ. P. 56(e). It cannot be used to place before the court inadmissible evidence from the Cost/Loss Analysis about which Stewart has demonstrated no independent personal knowledge. *See id.*; *Intermountain Farmers*, 574 P.2d at 1165; *Bowers v. Call*, 2011 UT App 143, ¶ 2, 257 P.3d 433.[6]

¶28     But even if the figure were admissible, the affidavit provides a total loss figure without stating whether the figure represents net loss or gross loss. *See Stevens-Henager College*, 2011 UT App 37, ¶¶ 26–29. Again, this information can only be gained by consulting the inadmissible summary. Furthermore, the affidavit offers no explanation for how the conclusion as to total loss was derived. "An affidavit that merely reflects the affiant's unsubstantiated opinions and conclusions is insufficient to create a genuine issue of fact." *Overstock.com, Inc. v. SmartBargains, Inc.*,

---

6. Although RB&G did not move to strike the affidavit below, it did argue to the trial court that the deposition and affidavit testimony of damages were inadmissible on the ground that the testimony "was merely a restatement and explanation of the summary" based solely on Stewart's observation of the underlying records and the summary itself. *See Howick v. Bank of Salt Lake*, 498 P.2d 352, 353–54 (Utah 1972) ("An affidavit that does not measure up to the standards of [Utah Rule of Civil Procedure] 56(e) is subject to a motion to strike; and formal defects are waived in the absence of such a motion *or other objection*." (emphasis added) (citation and internal quotation marks omitted)). Thus, on appeal RB&G may properly challenge the affidavit on this basis.

2008 UT 55, ¶ 16, 192 P.3d 858 (citation and internal quotation marks omitted); *see also id.* ¶ 12 (noting that because "specific facts are required to show whether there is a genuine issue for trial," the "*factual conclusions of an affidavit* are insufficient to raise a genuine issue of fact" (emphasis added) (citation and internal quotation marks omitted)). At the summary judgment stage, "mere conclusions and conjecture" are insufficient to establish a prima facie case as to the amount of damages. *See Stevens-Henager College*, 2011 UT App 37, ¶ 29.

¶29    The other evidence identified by Sunridge Enterprises is relevant but insufficient to show a genuine issue of material fact. For example, its response to interrogatories presents a theory of damages and makes allegations that go to "the fact of damages." *See id.* ¶ 16. The supplemental initial disclosure provides a basis for calculating the number of lost units. The sample closing statement provides a comparative estimate of gross revenue. Each of these factors is a necessary component of Sunridge Enterprises' damages calculation. But Sunridge Enterprises has failed to provide any supporting evidence of one crucial factor—costs. Without this evidence, no fact finder could "determine with reasonable certainty the amount of lost net profits." *Sawyers*, 722 P.2d at 774; *see also TruGreen Cos. v. Mower Bros., Inc.*, 2008 UT 81, ¶ 15, 199 P.3d 929.

¶30    In sum, the deposition and affidavit testimony appear to be an attempt to place before the court an inadmissible summary. In any event, the deposition and affidavit provide, at best, unsubstantiated conclusions as to the lost profits. Sunridge Enterprises provided no admissible evidence from which a fact finder could conclude with reasonable certainty that the figures represented net loss. Nor did it provide any supporting evidence of costs from which a fact finder could estimate its net loss. Thus, Sunridge Enterprises has failed to demonstrate that genuine issues of material fact exist that would preclude summary judgment in favor of RB&G.

CONCLUSION

¶31 Sunridge Enterprises has not shown that the trial court erred in finding that Sunridge Enterprises had a full opportunity to conduct discovery. The trial court acted within its discretion in denying Sunridge Enterprises' request for additional discovery. Sunridge Enterprises has also failed to show that it produced sufficient admissible evidence of the amount of alleged damages to survive summary judgment.

¶32 Affirmed.

_____