**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 9, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAMES SWEET; ASTANZA DESIGN, a
Colorado limited liability company,

    Plaintiffs - Appellants,

v.

CORPORATION OF THE PRESIDING
BISHOP OF THE CHURCH OF JESUS
CHRIST OF LATTER-DAY SAINTS, a
Utah corporation,

    Defendant - Appellee.

No. 19-4112
(D.C. No. 2:16-CV-00225-RJS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

In this diversity action, Plaintiffs-Appellants James Sweet and Astanza Design

LLC (collectively "Sweet") sued Defendant-Appellee Corporation of the Presiding

Bishop of the Church of Jesus Christ of Latter-Day Saints ("the Church") for

intentional interference with economic relations under Utah law. Sweet alleged that

the Church interfered with Sweet's exclusive sales representation agreements with

two foreign furniture manufacturers, Giemme (d/b/a Francesco Molon) and Caoba de

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. Aplt. App. P. 32.1 and 10th Cir. R. 32.1.

Honduras, by successfully pressuring the manufacturers to deal with the Church directly in their business relations and eliminate Sweet as their exclusive sales representative. The district court granted summary judgment to the Church and denied Sweet's subsequent alternative motions for alteration of judgment or relief from judgment. Sweet now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

James Sweet owns Astanza Design LLC, an international interior design and global sourcing firm. In 2008, Sweet was contacted by an agent of the Church, who wanted to purchase furniture for new temples in San Salvador and Rome. Sweet introduced the Church to Honduran and Italian furniture manufacturers, Caoba de Honduras and Giemme (d/b/a Francesco Molon).

In 2009, Sweet entered into a representation agreement with Caoba establishing Sweet as the exclusive sales representative for Caoba in its business with the Church. In addition to entitling Sweet to a commission for each purchase the Church made from Caoba, the agreement prohibited Caoba from "deal[ing] with the . . . Church directly . . . to market or sell [Caoba's] Products or Services to the LDS Church." Aplt. App. at 116. Sweet entered into a similar agreement with Giemme in 2011. These arrangements continued for the next few years, during which time the Church honored the agreements and worked with Sweet. But after selecting Giemme to be the primary furniture supplier for the LDS temple in Rome, "the Church preferred not to deal with a middleman." Aple. Br. at 5.

2

Starting in 2012, new Church managers began pressuring Giemme to work directly with the Church. Among other things, "[one Church representative] threatened that, unless [Giemme] eliminated Sweet, [the Church] would not purchase any furniture from [Giemme] for its Rome Temple." Aplt. App. at 901. The Church similarly pressured Caoba to end its exclusive representation agreement with Sweet. Both manufacturers complied. Although Giemme assured Sweet that he would be copied on communications and still receive commissions, Giemme did not follow through on these assurances. Caoba similarly "ceased paying [Sweet's] commission and excluded [him] from all communications with the Church." Aplt. Br. at 11.

## II

Sweet sued the Church for intentional interference with economic relations and unjust enrichment[1] in the United States District Court for the District of Utah under diversity jurisdiction. Thus, Utah law, the law of the forum state, governs. *See Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014).

Under Utah law, a plaintiff alleging intentional interference with economic relations must prove "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 345 P.3d 553, 556 (Utah 2015). The latter two elements were at issue in this case before the district court.

---

[1] Because Sweet did not contest dismissal of the unjust enrichment claim, the district court dismissed that claim with prejudice. Sweet does not appeal that ruling here.

3

Utah law clearly recognizes "violence, threats or other intimidation" as improper means of interference. *C.R. England v. Swift Transp. Co.*, 437 P.3d 343, 353 (Utah 2019). A plaintiff can also show improper means by pointing to a defendant's "actions that are contrary to law, such as violations of statutes, regulations, or recognized common-law rules, or actions that violate an established standard of a trade or profession." *Id.* (quotation marks and citation omitted).

To prove damages, a plaintiff must produce sufficient evidence "to permit the trier of fact to determine with reasonable certainty the amount of lost . . . profits." *TruGreen Cos. v. Mower Bros., Inc.*, 199 P.3d 929, 933 (Utah 2008) (quoting *Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986)). Although not "exacting," the reasonable certainty standard requires a plaintiff's evidence to "rise[] above speculation and provide[] a reasonable, even though not necessarily precise, estimate of damages." *Id.* at 932–33 (quoting *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985)). Nevertheless, "[m]ere conclusions and conjecture will not suffice. . . . [A] plaintiff must provide supporting evidence." *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 305 P.3d 171, 176 (Utah Ct. App. 2013) (quotation marks and citations omitted).

To recover damages in the form of lost profits, a Utah plaintiff must prove *net loss*, which is "determined by computing the difference between the gross profits and the expenses that would be incurred in acquiring such profits." *Sawyers*, 722 P.2d at 774. "[R]easonable certainty requires more than a mere estimate of net profits. In addition to proof of gross profits, there must generally be supporting evidence of

4

overhead expenses, or other costs of producing income from which a net figure can be derived." *Id.*

As regards his claim that the Church had intentionally interfered with his economic relations, Sweet alleged the Church engaged in improper means under Utah law by violating a standard in the furniture, fixtures, and equipment (FF&E) industry. Under that standard, purchasers and customers honor exclusive representation agreements between outside sales representatives and manufacturers, like the exclusive agreements Sweet had with both Giemme and Caoba. Sweet offered three experts from the FF&E industry who all spoke to the existence of this standard.

To prove damages, Sweet relied on purchases made by the Church in 2012 and several assumptions about the volume and value of those purchases over the years to estimate $3.5 million in lost revenue. Sweet provided documentation from the Church and bank slips to support this determination. As for costs, Sweet stated in his declaration,

> [B]ecause I worked out of my home, I had no incremental costs associated with rent, utilities, office phone, cell phone, internet and equipment costs associated with Giemme and Caoba business. Although there were costs for travel specific to the LDS Church or proportioned if the travel includes other business purposes, those costs were *de minim[i]s*. These above stated costs have been included in my projections.

Aplt. App. at 613–14; *see also id.* at 903–04. Sweet provided no documentation of any of these costs.

The Church moved for summary judgment. After a hearing, the district court granted summary judgment on the narrow grounds that Sweet failed to provide

5

evidence of net loss, as required by Utah law. The district court concluded that "although [Sweet] produce[d] evidence of lost gross revenue, [he] does not supply evidence of the costs [he] would have incurred in acquiring that revenue." *Id.* at 903. The district court rejected Sweet's argument that because the overhead costs of his business were *de minimis*, he did not have to prove them with absolute precision. The district court found no basis for such a *de minimis* exception in Utah law, and even if such an exception did exist, the court ruled "Sweet fail[ed] to provide the evidence necessary—i.e., cost figures or reasonable estimates—for a factfinder to determine whether such costs were *de minim[i]s*." *Id.* at 904. The district court confined its summary judgment ruling to this cost issue and did not address whether the Church engaged in improper means by violating an industry standard.

Sweet then filed alternative Rule 59(e) and Rule 60(b)(1) motions for alteration of judgment or relief from judgment. He urged the court to reverse its grant of summary judgment for the Church or excuse his "mistake" in failing to provide evidence of costs and allow him to offer supplementary documentation proving his costs were *de minimis*. Sweet attached proof of his costs to his post-judgment motions.

The district court denied both of Sweet's motions. As to the motion for alteration of judgment, the court concluded

> Rule 59(e) affords Sweet no relief. Sweet does not argue an intervening change in the controlling law. Sweet has not shown the evidence he now seeks to produce was previously unavailable. Sweet shows only the difficulty of estimating [his] costs using *available* evidence. And rather

6

than having a clear conviction that judicial error occurred, the court maintains a firm conviction no judicial error occurred. [2]

*Id.* at 1191 (emphasis in original).

As for Sweet's Rule 60(b) motion, the district court declined to excuse as a "mistake" Sweet's failure to supply adequate evidence of his costs. The district court acknowledged that making this estimate was "a challenging, unexpected, and unusual task," but "without it, [the Church] could not test Sweet's conclusion [his] costs were *de minim[i]s*." *Id.* at 1195–96. Stressing finality interests, the district court decided that Sweet's voluntary failure to provide evidence of costs was not enough to merit relief from judgment, "even where [Sweet] might cure any prejudice by tardily supplying a damages figure." *Id.* at 1196. Because "Sweet could have protected against [his] mistake," the district court denied the Rule 60(b)(1) motion. *Id.*

### III

We review a district court's grant of summary judgment de novo. *Auto-Owners Ins. Co. v. Csaszar*, 893 F.3d 729, 733 (10th Cir. 2018). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). When applying this standard, we draw all reasonable inferences from the

---

[2] The district court also concluded that denying Sweet's Rule 59(e) motion would not result in manifest injustice because Sweet would have lost his case anyway as he failed to prove the Church had engaged in improper means by violating an industry standard.

7

record in the light most favorable to the non-moving party. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).

Sweet argues on appeal that the district court improperly demanded mathematical precision for his proof of costs, rather than adhering to Utah law's requirement of proving damages with "reasonable certainty." Sweet alleged that he did not have overhead costs associated with his business: he worked from home, he did not have any employees or storage spaces, and he would have paid for internet and cable even if Giemme and Caoba had not breached their agreements. The only real avoided cost was the travel on behalf of Giemme and Caoba's business with the Church. But because Sweet traveled on behalf of multiple clients on each trip, he never allocated a precise cost amount to each client. In his view, he should not have to provide a precise number on these negligible costs to meet his burden on damages; claiming that such costs were *de minimis* should be enough. This is allowed, Sweet urges, because Utah law only requires a "reasonable approximation" of damages and this standard "in and of itself, means that a failure to specify a *de minimis* cost would not defeat [the] reasonable certainty" required to show damages. Aplt. Br. at 38. In Sweet's view, a "[contrary] rule that required a plaintiff to establish every avoided cost no matter how small with mathematical certainty would thus contradict the entire body of Utah law on lost profits." *Id.*

We disagree. Utah courts have not created a *de minimis* exception to the requirement that a plaintiff prove costs. In *Garcia v. Mountain States Tel. & Tel. Co.*, a dentist whose professional listing was erroneously removed from the phone book

8

lost his case because he "tried and submitted his case on the theory of his loss of gross income." 315 F.2d 166, 168 (10th Cir. 1963). Because "there [wa]s nothing to indicate or from which the claimant's net loss c[ould] be determined," we affirmed the district court's directed verdict against the plaintiff, relying on Utah law. *Id.* at 169. In *Sawyers v. FMA Leasing Co.*, the Utah Supreme Court held that a truck distributor's "failure to place before the court financial summaries, monthly sales volume breakdowns, costs of sales expenses, or any other overhead expenses from which the trial court could reasonably have calculated [their] lost net profit [wa]s fatal to their claim." 722 P.2d 773, 775 (Utah 1986). And most recently, in *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, the Utah Court of Appeals concluded that a residential homebuilder did not create an issue of material fact on damages by "discuss[ing] costs in general terms but never provid[ing] any figures, either for the total cost of building the additional units or for building an average unit." 305 P.3d 171, 179 (Utah Ct. App. 2013).

Sweet argues that the nature of his business, "as a home-based, commission-only sales representative," Aplt. Br. at 37, distinguishes his business from those at issue in these cases and thereby entitles him to a different result. It is true that "Utah courts have not addressed lost profits for a business like [Sweet's], where revenue from additional clients does not require additional costs to generate but rather goes directly to profit margin."[3] *Id.* at 33. But Sweet must still show *something*. Utah

_____

[3] Sweet additionally argues the district court improperly drew inferences against him and engaged in "rank speculation" by concluding he must have incurred

9

courts have not adjusted the requirements for proof of costs depending on the type of business involved or the amount of costs at issue. The district court was correct that Sweet had identified no Utah case law allowing a plaintiff to satisfy its burden of showing net loss by claiming its costs were *de minimis*. As a result, the law of intentional interference in Utah is clear: plaintiffs must prove to a reasonable certainty their *net* loss, which requires proof of costs. *Sawyers*, 722 P.2d at 774. Sweet's proof of *gross* loss, combined with his testimony that his costs were *de minimis*, is not enough to create a genuine dispute of material fact. *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985) ("Proof of loss of gross income only is an insufficient foundation for proof of amount of damages."); *Sunridge Dev. Corp.*, 305 P.3d at 180 ("At the summary judgment stage, 'mere conclusions and conjecture' are insufficient to establish a prima facie case as to the amount of damages.") (citation omitted).

Sweet is correct that he did not have to prove every line of costs with mathematical precision. But again, he had to show *something* to meet his burden under Utah law. *See Cook Assocs., Inc. v. Warnick*, 664 P.2d 1161, 1166 (Utah 1983) (plaintiff carried its burden on damages by "provid[ing] a breakdown of monthly sales volumes, costs of sale, and net profits"). Allowing a plaintiff to invoke a *de minimis* exception anytime its costs are small would ultimately become a question of

---

some sort of overhead costs in his business. Aplt. Br. at 38–40. Yet Sweet undermines this contention by acknowledging he did incur costs during the travel on behalf of Giemme and Caoba but that those costs were *de minimis*.

degree and relativity unmoored from any guidance from the Utah courts. Whether a *de minimis* exception is applicable would be a fact-dependent inquiry and could potentially stray from what Utah courts have consistently required plaintiffs to show: proof of net loss. *See SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1082 (10th Cir. 2018) ("[W]e are generally reticent to expand state law without clear guidance from the highest court.") (citation omitted).

Sweet did not show proof of net loss because he did not provide evidence of his costs beyond his allegations that such costs were *de minimis*. Because we are unable to find such an exception under Utah law and because Sweet did not carry his burden on the element of damages, the district court's grant of summary judgment for the Church was proper.

IV

We review denials of post-judgment motions under Rules 59(e) and 60(b) for abuse of discretion. *Jennings v. Rivers*, 394 F.3d 850, 854 (10th Cir. 2005). A legal error constitutes an abuse of discretion. *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1233 (10th Cir. 2018).

Relief under Rule 59(e) is allowed in three situations: when the moving party shows "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* None of these conditions are presented

11

here. The district court correctly concluded that Sweet did not argue an intervening change in the controlling law. And rather than showing new evidence that was previously unavailable, "Sweet show[ed] only the difficulty of estimating [his] costs using *available* evidence." Aplt. App. at 1191 (emphasis in original). "Where a party seeks Rule 59(e) relief to submit additional evidence, the movant must show either that the evidence is newly discovered [or,] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence." *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1213 (10th Cir. 2012) (brackets in original). Because Sweet argued neither of those points, the district court did not abuse its discretion in denying the Rule 59(e) motion.[4]

Rule 60(b)(1) may relieve a party from a final judgment based on the existence of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. Pro. 60(b)(1). "[T]he 'mistake' provision . . . provides for the reconsideration of judgments only where: (1) a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority from a party, or (2) where the judge has made a substantive mistake of law or fact in the final judgment or order." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir. 1996). "Generally speaking, a party

---

[4] Given that we affirm the district court's grant of summary judgment on the costs issue, and also conclude that the district court did not abuse its discretion in denying Sweet's Rule 59(e) motion, we need not address the district court's conclusion that Sweet's claims would also fail because he did not establish an industry standard.

12

who takes deliberate action with negative consequences . . . will not be relieved of the consequences [by Rule 60(b)(1)] when it subsequently develops that the choice was unfortunate." *Id.* at 577 (brackets in original). "Similarly, Rule 60(b)(1) relief is not available for a party who simply misunderstands the legal consequences of his deliberate acts." *Id.*

The district court correctly concluded that relief under Rule 60(b)(1) is not appropriate "when the mistake was the result of a deliberate and counseled decision by the party." *Id.* Throughout the litigation, Sweet made a clear choice: he consistently invoked a *de minimis* exception for proof of costs despite Utah law's clear requirement that plaintiffs provide evidence of net loss. Although Sweet's home-office business model is unique when compared to the businesses at issue in the relevant cases, the Utah courts have not recognized a *de minimis* exception for such businesses or deviated from requiring proof of costs. Rule 60(b)(1)'s mistake provision does not provide an out for Sweet.

We note that the district court did recognize that proof of costs in this case may have been a "challenging, unexpected, and unusual task." Aplt. App. at 1195. But the fact that Sweet did eventually come forward with proof of his costs after summary judgment only shows that presentation of that evidence could have come earlier. "Rule 60(b)(1) is not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances . . . supporting facts which were available for presentation at the time of the original argument." *Cashner*, 98 F.3d at 577. Because "Sweet could have protected against

13

[his] mistake," Aplt. App. at 1196, the district court's denial of the Rule 60(b)(1) motion and its refusal to consider supplemental evidence of costs was not an abuse of discretion.[5]

V

We AFFIRM the district court's grant of summary judgment and the denial of Sweet's Rule 59(e) and 60(b)(1) motions.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

---

[5] The district court considered Sweet's motion for reconsideration only under Rule 60(b)(1)'s "mistake" provision, concluding that Sweet waived any argument as to "excusable neglect" because Sweet only cursorily invoked that provision in his 60(b)(1) motion. Aplt. App. at 1194 n.49. We need not decide whether this determination was correct because Sweet's decision to rely on a *de minimis* exception to the proof of costs requirement cannot accurately be characterized as neglect under Rule 60(b)(1). *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) ("'[E]xcusable neglect' is understood to encompass situations in which failure to comply with a . . . deadline is attributable to negligence. . . . [Neglect] therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.") (quotation marks and citations omitted).