Vopel H. LANDER, Petitioner,

v.

INDUSTRIAL COMMISSION OF UTAH;
Plateau Mining Company; Workers
Compensation Fund of Utah; Travelers
Insurance Company; and the Employ-
ers' Reinsurance Fund, Respondents.

No. 940335–CA.

Court of Appeals of Utah.

April 20, 1995.

Virginius Dabney, Salt Lake City, for peti-
tioner.

Alan L. Hennebold, Salt Lake City, for
Industrial Com'n.

Mark D. Dean, Salt Lake City, for respon-
dents Plateau Mining and Workers Compen-
sation.

Steven J. Aeschbacher, Salt Lake City, for Plateau Mining and Travelers Ins.

Before BENCH, GREENWOOD and WILKINS, JJ.

## OPINION

WILKINS, Judge:

We have determined that "[t]he facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Utah R.App.P. 29(a)(3).

Petitioner seeks review of the Industrial Commission's order denying him additional worker's compensation benefits. The single issue raised on appeal is whether the Commission's refusal to convene a hearing on objections to the report of the medical panel constitutes a denial of due process of law under the United States Constitution and the Utah Constitution. We hold that the procedure employed by the Commission, as permitted by Utah Code Ann. § 35–1–77(2)(e) (Supp.1994) is constitutional, and affirm the order of the Commission.

## BACKGROUND

The facts, as found by the administrative law judge (ALJ), are not contested. Petitioner suffered a series of work-related back injuries during the period 1978 to 1983. He has received worker's compensation benefits as a result of these injuries. In 1985, two years after his last injury, Petitioner was medically retired by his employer, Plateau Mining Company (Plateau). As part of the retirement process, he received documents relating to his pension from Plateau's parent company, Texaco.

In 1987, Petitioner was hospitalized for psychotic delusions, after informing the police that a satellite was beaming in on him, and that his life was being threatened by communists. Hospital records reflect that he reported a target on his forehead for a nuclear weapon, but made no mention of his former employer. Petitioner has a history of alcohol and substance abuse, and he suffered from a period of depression after a divorce.

Eventually, Petitioner's psychological problems included a belief that the pension documents he received from Texaco in 1985 reflected securities fraud. He testified that he believed his psychiatric problems were related to his back injuries in that the problems resulted from disputes regarding his retirement benefits.

Petitioner filed an application with the Commission alleging he was entitled to payment of his medical expenses related to treatment of his psychiatric problems because of the four industrial injuries at Plateau leading to his retirement. Plateau responded that the psychiatric problems were not industrially caused, and Petitioner was therefore not entitled to payment.

A formal hearing was held in May 1992, at which time Petitioner testified on his own behalf but submitted no other evidence relating to the medical causation of his psychiatric problems. Evidence was presented at the hearing of an examination conducted by Dr. David McCann in February 1992 at the request of the Worker's Compensation Fund. The examination revealed that there were no causative factors relating Petitioner's industrial accidents to Petitioner's later psychiatric condition.

Over the objections of Plateau, the Commission referred the matter to a medical panel for evaluation. The medical panel issued its report August 13, 1992. The panel found no medical causal relationship between Petitioner's psychiatric condition and the industrial accidents, and concluded that the medical care Petitioner had received since 1987 for his psychiatric condition was not necessitated by the industrial accidents. The medical panel did note that, in their opinion, "the proximate cause of [Petitioner's] paranoid mental illness was the circumstances surrounding being retired and the subsequent relationship with Texaco and the various people involved in that."

A copy of the report of the medical panel was provided to each of the parties, with a notice from the Commission that parties had fifteen days within which to file objections to the findings of the panel. The notice also indicated that any objections required a specific reference to the finding or conclusion

objected to, and required the objector to "state in detail the medical evidence or facts" relied upon as a basis of the objection.

The Commission's notice also stated:

Parties who desire to submit the matter on written objections without a hearing may so indicate in a letter accompanying the objections. A hearing will not be set on the objections unless there is a proffer of conflicting medical testimony. If a hearing is scheduled, the Medical Panel Chairman will be requested by the Commission to appear and testify and all parties will be notified of the time and place of the hearing.

Petitioner objected to the conclusions of the medical panel report on the grounds that it could be interpreted to establish causation, asserting that absent the four industrial accidents, he would not have been medically retired, and been forced to deal with the issues related to retirement. However, he did not ask for a hearing, nor did he proffer any conflicting medical testimony.

Plateau also objected to any reliance upon the medical panel report to establish a causal link between the industrial injuries and the psychiatric treatment, but did not ask for a hearing on its objections to the report.

The Commission, on the recommendation of the ALJ, concluded that the causal relationship, if any, between the industrial injuries to Petitioner and his later psychiatric condition was too attenuated to constitute sufficient causation. Petitioner was denied any additional benefits.

Petitioner sought a review of the order denying his claim. After disposing of Petitioner's other claims of error, the Commission addressed his concern regarding a hearing to dispute the report of the medical panel. The Commission denied this objection, stating:

Finally, Mr. Lander argues he was denied a constitutional right to cross examine the chairman of the medical panel. Utah Code Ann. § 35–1–77(2)(e) grants the Commission discretion to conduct hearings on objection to medical panel reports. The Commission must presume that such a legislative grant of authority is constitutional.

## ISSUE ON APPEAL

Petitioner raises a single issue on appeal. He claims that the Commission's failure to convene a hearing on his objections to the report of the medical panel constitutes a denial of his rights under both the United States Constitution and the Utah Constitution to confront and cross-examine the medical panel. To the extent that the Commission relied upon the discretion granted to it in convening such a hearing by section 35–1–77(2)(e), Petitioner claims the statute is unconstitutional.[1]

## STANDARD OF REVIEW

◼ Petitioner presents a question of law, which we review for correctness under Utah Code Ann. § 63–46b–16(4)(a) and (d). *Questar Pipeline Co. v. State Tax Comm'n*, 817 P.2d 316, 317–18 (Utah 1991); *Kennecott Corp. v. State Tax Comm'n*, 858 P.2d 1381, 1384 (Utah 1993).

## CONSTITUTIONALITY OF SECTION 35–1–77(2)(e)

The provisions of the Utah Workers' Compensation Act[2] were modified in 1982 to grant the Commission discretion in holding a hearing when objections to the report of a medical panel are received. Prior to 1982, the statute required a medical panel hearing if objections were raised.[3] The statute now provides:

If objections to the report are filed, the commission *may* set the case for hearing to determine the facts and issues involved. At the hearing, any party so desiring may request the commission to have the chairman of the medical panel, the medical di-

---

1. Petitioner does not challenge the Commission's application in this case of the power granted by section 35–1–77(2)(e) as an abuse of discretion.

2. Utah Code Ann. §§ 35–1–1 to –109 (Supp. 1994).

3. *Ortiz v. Industrial Comm'n*, 766 P.2d 1092, 1094 (Utah App.1989).

rector, or the medical consultants present at the hearing for examination and cross-examination. For good cause shown, the commission may order other members of the panel, with or without the chairman or the medical director or medical consultants, to be present at the hearing for examination and cross-examination.

Utah Code Ann. § 35–1–77(2)(e) (Supp.1994) (emphasis added).

The permissive language of section 35–1–77(2)(e) was clearly intended by the legislature to vest the Commission with the discretion both to determine whether to hold a hearing on objections to a medical panel's report, and whether to require the presence of members of the medical panel at the hearing for purposes of examination and cross-examination. Petitioner argues that to allow the Commission the discretion to deny him the opportunity to confront and cross-examine the medical panel is a denial of due process as embodied in the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the Utah Constitution. This question has not been addressed by our supreme court directly, and presents an issue of first impression.[4]

▆▆▆ Statutes are presumed valid, *Amax Magnesium Corp. v. State Tax Comm'n*, 796 P.2d 1256, 1258 (Utah 1990), and should be construed so as to be applied constitutionally. *State v. Robertson*, 886 P.2d 85, 87 (Utah App.1994). The party challenging a statute bears the burden of establishing its invalidity. *Zissi v. State Tax Comm'n*, 842 P.2d 848, 855 (Utah 1992). In support of this burden, Petitioner relies upon the decision of the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

▆▆▆ *Mathews* arose from a claim that denial of an oral evidentiary hearing by the Social Security Administration (SSA) prior to the termination of disability benefits constituted a denial of due process. The Court held that the procedures applied by the SSA were adequate, and established a balancing test for due process in administrative proceedings. Under the *Mathews* test, the court must look at three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903.

In reaching its conclusion, the Court noted that in disability cases, such as *Mathews,* factual issues in dispute "will turn, in most cases, upon 'routine, standard, and unbiased medical reports by physician specialists,' concerning a subject whom they have personally examined." *Id.* at 344 and 907. (citation omitted). The Court concluded that in such cases, an evidentiary hearing was of substantially less value than in cases of disputed fact.

Applying the *Mathews* test to this case requires a determination of the significance of the private interest affected by the Commission's action. Petitioner urges us to consider his application for additional benefits as a vested right that he is being denied as a result of the Commission's action. However, as clearly evidenced in the statute supporting his action, he is making an application for benefits. These are not benefits to which he has already been deemed entitled, but ones he hopes to receive. The action of the Commission, at most, denies him the opportunity to make his claim. While this is an important right under both state and federal law, it falls short of a vested right to benefits, as in *Mathews.*

The second element of the *Mathews* test requires evaluation of the risk of erroneous deprivation of the interest (the right to assert the claim for additional benefits) as a result of the procedures used, and the probable value, if any, of additional or substitute safeguards. To understand the meaning of

---

4. In his learned dissent in *Moore v. American Coal Co.,* 737 P.2d 989, 991 (Utah 1987), Associate Chief Justice Stewart did address the question. However, the majority chose to "express no opinion on the constitutionality of the statute [section 35–1–77] or its application." *Id.* at 990.

this element in Petitioner's case requires first a clear understanding of the purpose of the claimed right to confront and to cross-examine the medical panel.

There is no claim here that Petitioner was denied access to the report of the medical panel. As such, it is not an ex parte medical examination.[5] Petitioner was timely given a copy of the report and had an opportunity to object to the findings and conclusions contained in the report by the submission of specific objections and the proffer of conflicting medical evidence. Had he done so, and requested a hearing, we must assume the Commission would have properly considered the usefulness of such a request and acted appropriately.

The purpose of confronting and cross-examining a witness is to allow the finder of fact to assess the veracity of the witness. It serves a much less significant purpose in an administrative setting when factual disputes are capable of resolution through the application of relatively objective scientific criteria.[6] Here, the members of the medical panel were not witnesses at the hearing at all, but were independent "objective scientific" experts consulted by the Commission for the purpose of assuring medical competence in fairly reviewing Petitioner's application.

Petitioner failed to raise any factual dispute regarding the findings of the panel. The only dispute with the report he raises in his objection is a matter of legal interpretation of causation. This is the same issue noted by Plateau in their response to the report. In neither case does the confrontation and cross-examination of the medical panel, or its chairman, present a compelling concern. The other medical evidence presented at the hearing, and the accumulated wisdom and knowledge of the Commission relating to matters of this type, act as an adequate safeguard of Petitioner's rights. As such, the second element of the *Mathews* test weighs in favor of the procedure used by the Commission.

The final *Mathews* element is an examination of the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. As always, the government's interest here is in the efficient and fair administration of the law as enacted by the legislature. Section 35–1–77 was modified in 1982 to make the convening of a hearing on objections to the report of a medical panel discretionary with the Commission. Under prior law, whenever an objection was received, a hearing, with one or more members of the medical panel present for examination, was mandatory.

In a matter always involving two competing parties and only a single winner, at least one side in the dispute must find itself at odds with the conclusions reached by the medical panel. The result under the former statute was a significant number of hearings for the purpose of addressing objections to the findings of the medical panel. One can imagine the increased administrative and fiscal burden on the government to include such a hearing as part of most, if not all, proceedings under the Act. The increase in commitment for the members of the medical panel to attend and participate meaningfully in such hearings would decrease the pool of willing and available medical experts.

By deferring to the sound judgment and discretion of the Commission regarding when such a hearing is actually helpful to the Commission in fulfilling its responsibility as a finder of fact, the legislature has expressed its intent that this particular balance be tilted in favor of the preservation of resources for better and more beneficial uses. We cannot disagree that the balance with regard to this element of the *Mathews* test weighs in favor of the current statutory scheme.

When all three elements of *Mathews* are considered, the procedure described in section 35–1–77 passes constitutional muster. This section, which the Commission applied when it reviewed and rejected Petitioner's

---

**5.** Had the medical panel report been relied upon by the ALJ or the Commission without disclosure to the parties, and inclusion in the record, our conclusions might well be different.

**6.** *See* 2 Kenneth Culp Davis & Richard J. Pearce, Jr., *Administrative Law Treatise*, § 9.3 (3rd Ed.1994).

application for benefits, provided for a hearing, and the opportunity to present evidence, cross-examine adverse witnesses, and also to receive a copy of the medical panel's report and present rebuttal evidence. Given these safeguards of Petitioner's interests, the lack of a hearing *by right* to confront and cross-examine the medical panel does not violate the protections of the United States Constitution or those of the Utah Constitution regarding due process.

The Petitioner failed to raise or preserve below his other points on appeal. We therefore decline to address them. *John Deere v. A & H Equip.*, 876 P.2d 880, 888 (Utah App.1994).

## CONCLUSION

■ Under section 35–1–77, the Commission has the discretion whether or not to hold a hearing on objections to the report of a medical panel, and further discretion as to whether or not to require the presence of members of the medical panel when it does hold such a hearing. We hold that to do so is not a violation of due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the Utah Constitution. As such, section 35–1–77 is constitutional both facially and as applied.

The decision of the Commission is affirmed.

GREENWOOD, J., concurs.

BENCH, J., concurs in the result.