2013 UT App 179

# THE UTAH COURT OF APPEALS

MONTE JOHNSTON,
Petitioner,

*v.*

LABOR COMMISSION, VIRACON, AND NEW HAMPSHIRE
INSURANCE COMPANY,
Respondents.

Opinion
No. 20120313-CA
Filed July 18, 2013

Original Proceeding in this Court

Aaron J. Prisbrey and Elizabeth B. Grimshaw,
Attorneys for Petitioner
David H. Tolk and Cody G. Kesler, Attorneys for
Respondents Viracon and New Hampshire
Insurance Company
Alan L. Hennebold, Attorney for Respondent
Labor Commission

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
JAMES Z. DAVIS and WILLIAM A. THORNE JR. concurred.

ORME, Judge:

¶1      Monte Johnston was denied workers' compensation benefits for his head, neck, and back injuries after being involved in an industrial accident while working for Viracon. The administrative law judge (ALJ) denied Johnston's request for benefits primarily because of the opinions and conclusions contained in the independent medical panel's report. Johnston had objected to the medical panel's report and requested a hearing on his objection, but the ALJ denied his request. The Labor Commission Appeals

Board affirmed. Johnston now seeks judicial review of the Board's decision.

BACKGROUND

¶2     In 2009, Johnston worked as a console operator for Viracon, which specializes in manufacturing large glass windows. Before his accident at Viracon, Johnston already suffered from a pre-existing spinal condition that had required medical treatment. In fact, on the morning of his accident, May 13, 2009, Johnston had a routine physical in which he reported having constant mild lower back pain and painful clicking in his neck. In his report, Dr. Stratford—Johnston's treating physician—characterized Johnston's neck condition as "stable without meds" and his back condition as "stable."

¶3     Later that same day, Johnston was operating a "tugger" in Viracon's warehouse. Tuggers are heavy machines used for towing large racks of fabricated glass throughout the warehouse. As Johnston was making a left-hand turn with the tugger, his body was suddenly "jolted to the side and up over the handle bars." He collided with the front portion of the machine as his entire body was twisted sideways and forward. He managed to regain control of the machine, and he immediately drove to the warehouse's break room, where he experienced lower back pain.

¶4     Following the accident, Johnston complained of neck and back pain, swelling in his face and throat, slurred speech, and drooping on the left side of his face. He received a limited amount of chiropractic care and a "cervical epidural steroid injection." He also consulted with various doctors about his facial drooping and lower back pain. Johnston's facial condition was evaluated by Dr. Schmidt, who diagnosed him with Horner syndrome.[1] Johnston's

---

1. Horner syndrome typically involves "a drooping eyelid, decreased pupil size and decreased sweating on the

(continued...)

neck and back pain was evaluated by Dr. Reichmann, who concluded that Johnston had a disc herniation and multiple disc bulges in his spine. Dr. Reichmann opined that the accident at Viracon was the medical cause of Johnston's injuries, and he recommended that Johnston undergo a cervical fusion and decompression surgery. After a series of epidurals and other injections that took place over several months, Johnston underwent the recommended procedure in December 2009.

¶5 Shortly after he had surgery, Johnston filed an application for hearing with the Labor Commission, seeking payment of his medical expenses from Viracon and its insurer, New Hampshire Insurance Company. Doctors Moress and Knoebel examined Johnston on behalf of Viracon, and both concluded that the accident was not the medical cause of Johnston's injuries but that it had only exacerbated his pre-existing symptoms. Dr. Moress also opined that Johnston did not have Horner syndrome. Given the conflicting reports between the parties' respective doctors, the ALJ commissioned a one-member medical "panel" to perform an independent examination and review. Dr. Goldman, the panel's sole member, examined Johnston and reviewed his medical history. As part of his review, Dr. Goldman consulted with a Dr. Lee from Methodist Hospital in Houston, Texas, about the Horner syndrome diagnosis. Dr. Lee is the Chairperson of Ophthalmology at Methodist Hospital and is the author of an article on Horner syndrome that was published in the *Journal of Neuro-Ophthalmology*.

¶6 Dr. Goldman issued a written report, in which he concluded that the accident was not the medical cause of Johnston's injuries. Johnston's lower back injury, he opined, was only a "temporary aggravation" of a "pre-existing, well-documented" condition. Dr. Goldman also concluded that Johnston's facial drooping was more

---

1. (...continued)
affected side of [the] face." *Horner syndrome*, Mayo Clinic (April 16, 2011), http://www.mayoclinic.com/health/horner-syndrome/DS01137.

consistent with Bell's palsy[2] than Horner syndrome, and that as such, the drooping was not related to the accident or any subsequent injections Johnston received. With regard to treatment, Dr. Goldman believed that the injections Johnston had received were reasonable, but he did not believe that the cervical fusion and decompression surgery performed by Dr. Reichmann was necessitated by the accident.

¶7    Johnston filed a timely objection to the medical panel's report and requested a hearing before the ALJ on his objection. In his objection, Johnston took issue with the report's summarization of an observation from Dr. Moress's report, which stated that before the accident, Johnston had reported experiencing "constant low back pain and neck dysfunctions" to Dr. Stratford. Johnston claimed that this summarization was a material misstatement of fact. Johnston's objection also called Dr. Goldman's objectivity and impartiality into question because of an alleged "office-sharing arrangement with defense insurance examiners at the Intermountain Spine Institute," and he claimed that concerns about Goldman's impartiality were compounded by the improper appointment of a single-member medical panel. Lastly, Johnston asserted that the medical panel misunderstood and misapplied the "aggravation rule."

¶8    The ALJ did not hold a hearing on the objection, nor did she issue an interim order that ruled on the objection or the request for hearing. Instead, the ALJ issued her final Findings of Fact, Conclusions of Law, and Order (the Order) shortly after Johnston filed his reply to Viracon's response to the objection. The Order both ruled on the objection and disposed of Johnston's claim on the merits.

---

2. Bell's palsy "causes sudden weakness in [the] facial muscles. This makes half of [the] face appear to droop. [One's] smile is one-sided, and [the] eye on that side resists closing." *Bell's palsy*, Mayo Clinic (March 27, 2012), http://www.mayoclinic.com/health/bells-palsy/DS00168.

¶9     In the Order, the ALJ considered Johnston's concerns about how much "weight the report should be given" as well as his "allegations of bias and the appearance of impropriety." The ALJ found that "the report presents a well reasoned analysis and that the conclusions are supported by [her] own review of the evidentiary record." The ALJ also concluded that there was "no substance to the allegations" of bias, noting that the report "is supported by other medical evidence and opinion of record." The Order was silent as to Johnston's request for a hearing and did not specifically state that the request was denied or explain why a hearing would not be held. The Order overruled the objection, admitted the medical panel report into evidence, and relied on the medical panel's opinion as the basis for denying Johnston's claim for workers' compensation benefits.

¶10    Johnston appealed the ALJ's decision to the Labor Commission Appeals Board, arguing that he was erroneously denied a hearing on his objection, to which he was statutorily entitled; that the medical panel was biased against him; and that the medical panel's report contained factual misstatements and lacked the requisite foundational testimony to support its admission. The Board affirmed the ALJ.

¶11    The Board's decision first noted that under *Lander v. Industrial Commission*, 894 P.2d 552 (Utah Ct. App. 1995), the statutory provision giving the ALJ discretion to decide whether to hold an objection hearing is constitutional.[3] *Id.* at 556–57. The Board then concluded that "[i]t was not error for [the ALJ] to exercise her discretion and decline to hold a hearing on the medical panel's report." To support that conclusion, the Board conducted its own evaluation of Johnston's arguments as to whether he was entitled

---

3. Prior to 1982, a hearing was required if an objection to a medical panel report was filed. *See* Utah Code Ann. § 35-1-77 (Allen Smith Co. 1974); *Lander v. Industrial Comm'n of Utah*, 894 P.2d 552, 554 (Utah Ct. App. 1995). The statute was amended in 1982 to make such a hearing discretionary with the ALJ. *See* Utah Code Ann. § 35-1-77 (Allen Smith Co. Supp. 1982).

to an objection hearing, specifically focusing on the allegations of bias and the claim that the report relied on a misstatement of fact. The Board held that the allegations of bias were "speculative and not supported by the record" and that Johnston's misstatement of fact claim was unfounded because the panel's characterization of Johnston's injuries was consistent with Dr. Stratford's report. The Board did not address the ALJ's failure to provide any explanation for denying the objection hearing, yet it concluded that the ALJ did not abuse her discretion in denying the hearing. It also affirmed the admission of the medical panel's report and the ALJ's decision in favor of Viracon. Johnston now requests that this court review the denial of the objection hearing and the admission of the medical panel's report into evidence, contending that the Board's decision affirming the ALJ should be set aside and the case remanded so that a hearing can be held.

ISSUES AND STANDARDS OF REVIEW

¶12    There are two pertinent issues before us, both of which revolve around Utah Code section 34A-2-601. *See* Utah Code Ann. § 34A-2-601 (LexisNexis 2011).[4] First, Johnston argues that the ALJ

---

4. Section 34A-2-601 was amended during the past legislative session. *See* 2013 Utah Laws Ch. 428. Because the amendments are not material to this appeal, we cite to the last published version of the code. *See* Utah Code Ann. § 34A-2-601 (LexisNexis 2011).

    Section 34A-2-601 provides, in relevant part, that an applicant for workers' compensation benefits can file a written objection to the medical panel's report within twenty days after the report issues. *See id.* § 34A-2-601(2)(d)(ii). If no written objection is properly filed, the medical panel report is admitted into evidence. *Id.* § 34A-2-601(2)(d)(iii). If a written objection is filed, however, the administrative law judge "may set the case for hearing to determine the facts and issues involved." *Id.* § 34A-2-601(2)(f)(i). And in the event that the administrative law judge grants a hearing, the medical panel's report will be considered as evidence

(continued...)

abused her discretion in denying an objection hearing because Johnston raised several concerns in his request that sufficiently impugn both Dr. Goldman's credibility and his report's conclusions. Both sides agree that the ALJ has discretion to decide whether to hold a hearing on an objection to a medical panel report. *See* Utah Code Ann. § 34A-2-601(2)(f)(i) ("[T]he administrative law judge *may* set the case for hearing to determine the facts and issues involved.") (emphasis added).

¶13    Second, Johnston contends that the ALJ improperly admitted the medical panel's report into evidence without sufficient foundational testimony. This argument turns on the proper interpretation of section 601's provisions concerning the admissibility of medical panel reports. Statutory interpretation presents a question of general law, which we consider without any "deference to the expertise of the Commission." *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 608 (Utah 1983).

ANALYSIS

I. Denial of the Objection Hearing

¶14    Johnston believes that because he raised concerns of bias and foundational inadequacy relating to the medical panel's report, and because he requested a hearing as permitted by the statute, an objection hearing should have been held more or less as a matter of course. The ALJ's decision, however, did not address Johnston's request for a hearing but merely overruled his underlying objection.

¶15    When reviewing for an abuse of discretion by a trial court, we will reverse only "'if there is no reasonable basis for the decision.'" *State v. Ruiz*, 2012 UT 29, ¶ 23, 282 P.3d 998 (quoting

---

4. (...continued)
only "as far as the report is sustained by the testimony admitted." *Id.* § 34A-2-601(2)(g)(i)–(ii).

*Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 16, 163 P.3d 615). Although our cases have regularly encouraged trial courts to "give reasons on the record for discretionary rulings, . . . [a] failure to do so does not, alone, constitute an abuse of discretion and does not warrant reversal." *Id.* ¶ 24. *See State v. Pecht*, 2002 UT 41, ¶ 34, 48 P.3d 931. Instead, a trial court's failure to explain the basis for its decision will not be disturbed if a reasonable basis for its decision is apparent from the record. *See Ruiz*, 2012 UT 29, ¶ 24; *Pecht*, 2002 UT 41, ¶ 34. In cases where a reasonable basis is not clear from the record, the failure to explain will "'only justify *remand* to the trial court.'" *Ruiz*, 2012 UT 29, ¶ 24 (emphasis in original) (quoting *Neerings v. Utah State Bar*, 817 P.2d 320, 323 (Utah 1991)).

¶16    We first note that while the above discussion lays out the appropriate standard for trial courts, we see no reason to impose a more stringent standard upon administrative tribunals. Therefore, while it certainly would have made the Board's and our review of this case much easier had the ALJ provided an explanation in the Order, her discretionary denial of a hearing on Johnston's objection will be disturbed only if a reasonable basis for that decision is not apparent from the record. *See Brown & Root Indus. Servs. v. Industrial Comm'n*, 947 P.2d 671, 677 (Utah 1977); *Niederhauser Ornamental & Metal Works Co. v. Tax Comm'n*, 858 P.2d 1034, 1037 (Utah Ct. App. 1993).

¶17    Johnston essentially raised four issues in his objection. First, he claimed that the medical panel relied on "incorrect facts." Second, he questioned the medical panel's objectivity and impartiality. Third, Johnston challenged the propriety of a one-member medical panel. Fourth, Johnston claimed that the medical panel misunderstood and improperly applied the "aggravation" rule.[5] As the Board pointed out, there are several reasons why the

---

5. In this proceeding for judicial review, Johnston raises another concern, namely the medical panel's consultation with Dr. Lee about Horner syndrome and Bell's palsy. Johnston takes issue with the fact that Dr. Lee's full name was not provided in the medical

(continued...)

ALJ did not abuse her discretion in simply overruling the objection without convening the requested hearing.

A.      Reliance On Erroneous Facts

¶18    While Johnston believes that the medical panel's summarization of Dr. Moress's report is a material misstatement of fact, the information was not presented as one of the medical panel's own conclusions but merely as an excerpt from Dr. Moress's report. Moreover, the panel's summarization that Johnston had reported "constant low back pain and neck dysfunctions" is consistent with and supported by Dr. Stratford's own report, which stated that, prior to the accident, Johnston experienced constant mild pain in his lower back and pain with some clicking in his neck. Johnston has not cited to any information contained in the record, and we are not aware of any, that conflicts

---

5. (...continued)

panel's report, stating that he had to "scour the internet to ascertain it," and he objects to the panel's subsequent reliance on Dr. Lee's opinions. The medical panel's report identified Dr. Lee as "Dr. Lee, the Chairperson of the Department of Ophthalmology at the Methodist Hospital in Houston, Texas." Although Dr. Lee's first name was not stated in the report, it seems highly unlikely that there were multiple Methodist Hospitals in Houston that all had multiple Dr. Lees simultaneously serving as chairpersons of their respective Departments of Ophthalmology. Even if the absence of Dr. Lee's first name generated a concern about the validity of his credentials or expertise, Dr. Lee's opinion was just one of several reasons why the medical panel concluded that Johnston's symptoms were not consistent with a Horner syndrome diagnosis. The panel also relied on "Dr. Frank Netter's *Atlas of Human Anatomy*," the fact that Johnston was treated by one of his physicians for Bell's palsy, and the panel's own independent consideration of Johnston's symptoms. Accordingly, there was no sound reason to cross-examine Dr. Goldman about Dr. Lee's opinions, let alone to bring in Dr. Lee from Texas to question him directly.

with the factual representations made by the medical panel or that would have warranted further inquiry by the ALJ. We conclude that Johnston's claim that the medical panel's conclusions relied on a material misstatement of fact is without merit.

B.    Impartiality and Bias

¶19    Johnston contends that Dr. Goldman—the medical panel's sole member—has "extensive ties to the insurance industry" and that these longstanding ties, coupled with an office-sharing agreement he allegedly has with "numerous insurance medical examiners," renders him biased and impugns his ability to provide an objective opinion. Johnston believes that cross-examining Dr. Goldman at an objection hearing was necessary to ascertain the full measure of his impartiality. The Board, by contrast, believed that the allegations of bias "[we]re speculative and not supported by the record."

¶20    We agree with the Board. There is no indication in the record that any of the insurance medical examiners supposedly sharing an office with Dr. Goldman are party to or have any involvement with this case. And Johnston has not explained why an office-sharing agreement with non-party medical examiners has any bearing on Dr. Goldman's ability to render a credible opinion. Instead, Johnston merely speculates that "there are legitimate questions as to Dr. Goldman's ability to render a neutral opinion." Given that the findings in Dr. Goldman's report were consistent with findings from other reports submitted, and that Johnston's allegations are the product of speculation, the ALJ did not exceed her discretion in resolving the claim of bias without an objection hearing.[6]

---

6. A nearly identical claim of bias was brought against Dr. Goldman by another party before the Labor Commission in 2008. The Presiding Administrative Law Judge, in conjunction with the other administrative law judges, dismissed any concerns of bias based on Dr. Goldman's office sharing arrangement and noted that

(continued...)

C.      Medical Panel Composition

¶21     An administrative law judge may appoint a medical panel consisting of "*one or more* physicians specializing in the treatment of the disease or condition" involved in the particular claim at issue. Utah Code Ann. § 34A-2-601(1)(c) (LexisNexis 2011) (emphasis added). Johnston contends that, despite the plain language of section 34A-2-601, the appointment of a single-member medical panel violates the established practice and custom of appointing multi-member panels. He essentially believes that the Board's apparent preference in its previous decisions for multi-member panels trumps the plain language of the statute. The Board did not address this point in its decision, but it is readily apparent from a cursory review of the statute and relevant case law that single-member medical panels are acceptable.

¶22     While Johnston may be correct in asserting that single-member panels are more prone to "potential errors and questions of bias," the statute plainly authorizes administrative law judges to appoint single-member medical panels. *See id.* Johnston suggests that the Board has so regularly appointed multi-member panels that single-member panels have become a per se violation of the Board's own policies. But he has cited no authority in support of his position, and our cursory review of the case law reveals cases where single-member medical panels were utilized. *See, e.g., Kincheloe v. Coca-Cola Bottling Co.*, 656 P.2d 440, 441 (Utah 1982); *Sabo's Elec. Serv. v. Sabo*, 642 P.2d 722, 724 (Utah 1982). In light of the clear statutory language—and the complete lack of contradictory authority—we are simply not persuaded by Johnston's argument that the Board's supposed preference has somehow morphed into a binding practice that supercedes the

---

6. (...continued)
all of the judges "uniformly agree that his work has been and continues to be of the highest quality, always thoughtfully analyzed, thoroughly reasoned, supported by the medical records we ourselves review in detail and above all without any perceptible trace of bias or animus."

statute. We therefore conclude that section 34A-2-601 plainly allows administrative law judges to appoint single-member medical panels.

D.     Aggravation

¶23    A claimant can generally recover benefits when an industrial injury aggravates or "light[s] up" a pre-existing condition and has a causal connection with the subsequent onset of symptoms. *See Virgin v. Board of Review*, 803 P.2d 1284, 1288 (Utah Ct. App. 1990) (citing *Allen v. Industrial Comm'n*, 729 P.2d 15, 25 (Utah 1986)). Aggravation of a pre-existing condition is a factual matter to be determined by the ultimate finder of fact. *Id.* at 1287, 1289; *Chase v. Industrial Comm'n*, 872 P.2d 475, 479 (Utah Ct. App. 1994). The Board, as the ultimate fact finder, "may choose to give certain evidence more weight than other evidence," *Virgin*, 803 P.2d at 1289, and it is not bound by the opinions contained in the medical panel's report, *see id.* (noting that it is the Board's prerogative to believe only those statements from a doctor's opinion that "'impressed it as being true'" (quoting *Mollerup Van Lines v. Adams*, 398 P.2d 882, 885 (Utah 1965))). *See also Redman Warehousing Corp. v. Industrial Comm'n*, 454 P.2d 283, 285 (Utah 1969) ("We must pay great respect to the panel of medical experts, but they are not the ultimate fact finders.").

¶24    Johnston insists that an objection hearing was necessary because the medical panel was unaware of the aggravation rule and employed some other method for determining medical causation. The medical panel, however, is not the finder of fact and does not make a final and binding aggravation determination. *See Chase*, 872 P.2d at 479; *Giesbrecht v. Board of Review*, 828 P.2d 544, 548 (Utah Ct. App. 1992). While medical panel reports typically use the word "aggravate" and opine as to whether a pre-existing condition was made worse by the relevant industrial injury, medical panels comprised of individuals without legal training are not obligated to restrict their usage of the word "aggravate" to its legal construction as developed in our cases. *See Zimmerman v. Industrial Comm'n*, 785 P.2d 1127, 1131 (Utah Ct. App. 1989) ("The record viewed in its entirety, demonstrates that the aggravation

the medical panel referred to was that due solely to the temporary pain experienced by [claimant] following the accident and not aggravation of or by the pre-existing conditions . . . .”). Indeed, that is the very reason why the Board, and not Dr. Goldman, makes the determination as to whether a pre-existing condition was legally “aggravated.” It is the province of the Board, as the finder of fact, to view all the evidence submitted as a whole and then make an appropriate determination. Dr. Goldman’s understanding of the aggravation rule is not binding on the Board or its own application of the rule, and accordingly, the ALJ did not err in declining to convene a hearing to explore Dr. Goldman's understanding of the aggravation rule.

¶25 As previously suggested, it would surely be the better practice for administrative law judges to explain specifically why requested hearings, which are discretionary, will not be convened. It is invariably easier to evaluate the reasonableness of an exercise of discretion when it is explained. But after reviewing the record as a whole, it is apparent that the ALJ in this case did not abuse her discretion in denying a hearing on the objection and that the Board’s affirmance of the denial was appropriate. The factual statements in Dr. Goldman’s report are consistent with those found in Dr. Stratford’s report, and there are no facts in Dr. Goldman’s report that seem to irreconcilably conflict with those in other reports or that warrant further evidentiary inquiry. Johnston’s allegations of bias and impartiality are—as the Board aptly stated—“speculative and not supported by the record.” Single-member medical panels are explicitly permitted by statute, and Johnston has not cited to any authority that contradicts or supercedes the plain language of the statute. Finally, aggravation determinations are made by the finder of fact, and the Board is not bound by an independent medical panel’s possible misunderstanding of the aggravation rule.

## II. Admissibility of the Medical Panel’s Report

¶26 Utah Code section 34A-2-601 contemplates three potential scenarios in which a medical panel report can be admitted into evidence, but only two of those scenarios are expressly treated by

the statute. *See* Utah Code Ann. § 34A-2-601(2)(d)(iii), (2)(f)(i), (2)(g)(i)–(ii) (LexisNexis 2011). In the first scenario, where no objection to the medical panel report is made, "the report is considered admitted in evidence." *Id.* § 34A-2-601(2)(d)(iii). The second scenario occurs when an objection to the medical panel report is timely filed *and* the administrative law judge, in her discretion, convenes a hearing on the objection. *See id.* § 34A-2-601(2)(f)(i). In that instance, the medical panel report "may not be considered as evidence in the case except as far as the report is sustained by the testimony admitted." *Id.* § 34A-2-601(2)(g)(ii).

¶27    A third scenario—the one presented here—occurs when an objection to the report is timely filed but the administrative law judge elects not to hold an objection hearing. *See id.* § 34A-2-601(2)(f)(i) ("[T]he administrative law judge *may* set the case for hearing to determine the facts and issues involved.") (emphasis added). Section 34A-2-601 is silent as to whether, in this third scenario, a medical panel report is admitted as if no objection had been made, only after sufficient testimony, or only after some other unspecified laying of supporting foundation. *See id.* § 34A-2-601. The parties are predictably split on how this third scenario should play out. Johnston asserts that his objection sufficiently distinguishes this third scenario from the first scenario—subpart (2)(d)(iii)—because that provision only contemplates instances where no objection was made. *See id.* § 34A-2-601(2)(d)(iii). He maintains that a filed objection necessitates the laying of proper foundation before a medical report is admitted into evidence, regardless of whether a hearing is held. Viracon and its insurer, by contrast, believe that if an administrative law judge, in her discretion, properly denies an objection hearing, then the medical panel report should be admitted as if no objection had been made at all. The scenario before us is admittedly perplexing, and had the Legislature defined the scope and operation of this third scenario, then the focus of this appeal would be far more narrow and not have turned solely on our own interpretation of the statute.

¶28    When interpreting statutes, we look to the plain language of the statute and read that language as a whole, assuming each word was chosen carefully and advisedly. *See State v. Harker*,

2010 UT 56, ¶ 12, 240 P.3d 780; *Amax Magnesium Corp. v. Utah State Tax Comm'n*, 796 P.2d 1256, 1258 (Utah 1990). Viewed as a whole, this third scenario appears to turn on whether the administrative law judge properly exercised her discretion in denying a hearing and, if the denial was proper, whether the objection to the medical panel report was well taken.

¶29     In a close case—unlike this one—where an objection can be appropriately decided only after holding an objection hearing, it is an abuse of discretion if the administrative law judge denies a hearing. Because a denial is improper, the case would be remanded so that the necessary hearing could take place. Close cases that necessitate a hearing fit neatly within the confines of the second scenario—subparts (2)(f)(i) and (2)(g)(ii)—and consequently, the medical panel report in those cases will be considered as evidence only insofar "as the report is sustained by the testimony admitted." *See* Utah Code Ann. § 34A-2-601(2)(f)(i), (2)(g)(ii).

¶30     On the other hand, in cases where the administrative law judge has properly denied a hearing, the appropriate ruling on the objection should be obvious enough that no additional testimony or evidence is warranted. In those cases, the objection will either be obviously well taken or obviously not well taken. If it is obvious that the objection is not well taken, then the medical panel report will have no readily apparent deficiencies and supporting foundational testimony will not be necessary to substantiate the report's validity. Thus, the report will be treated as if no objection had been made and simply be admitted into evidence. *See id.* § 34A-2-601(2)(d)(iii). If, however, it is obvious that the objection is well taken such that no amount of supporting testimony could overcome the report's glaring deficiencies, then the objection should simply be sustained and the medical panel report be excluded.

¶31     Just as it was apparent from the record that the ALJ did not abuse her discretion in denying a hearing on Johnston's objection, it is also apparent that Johnston's objection is not well taken and that the ALJ did not err in overruling it. As previously discussed, Johnston's claims of factual misstatements and bias do not find any

tangible support in the record. His challenges to the composition of the medical panel and the panel's understanding of the "aggravation rule" are similarly not well taken. Because the grounds for his objection have no merit, the objection was not well taken, and the statute contemplates that the ALJ should have overruled the objection and admitted the report as if no objection had been made. *See id.* § 34A-2-601. We conclude that the ALJ complied with the requirements of section 34A-2-601 and that the Board properly endorsed her approach. We decline to disturb its decision.

CONCLUSION

¶32    When an objection to the independent medical panel's report is timely filed and a hearing is requested, the administrative law judge has discretion to decide whether or not to hold a hearing. Although it is best if the administrative law judge explains the rationale for her exercise of discretion, we will not disturb her decision unless there is no reasonable basis for the decision apparent in the record. Our review of the record in the case before us indicates that the ALJ was well within her discretion in denying a hearing on Johnston's objection.

¶33    Although the Legislature did not expressly define every contour of section 34A-2-601, the framework of the statute as a whole indicates that if the administrative law judge did not abuse her discretion in denying a hearing, then the medical panel report's admissibility will turn on whether the objection to the report is well taken. If well taken, the objection will be sustained and the report may be excluded. If, however, the objection is not well taken, then the report will be admitted as if no objection had been filed. Here, Johnston's objection was not well taken and the ALJ ruled correctly in admitting the report. Accordingly, we decline to disturb the Board's decision.

_____