**2018 UT App 213**

## THE UTAH COURT OF APPEALS

UTAH DEPARTMENT OF TRANSPORTATION,
Appellant,
*v.*
LEJ INVESTMENTS LLC, ROBERT BOWMAN CONSULTING LLC,
CRAIG JENSEN, RICHARD JENSEN, CAROL BOWMAN,
AND ROBERT BOWMAN,
Appellees.

Opinion
No. 20160648-CA
Filed November 8, 2018

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 110902201

Sean D. Reyes, Barbara E. Ochoa, William H.
Christensen, David M. Quealy, and Brent A. Burnett,
Attorneys for Appellant

Jonathan O. Hafen, Justin P. Matkin, and Jeffery A.
Balls, Attorneys for Appellees

JUDGE DAVID N. MORTENSEN authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN FORSTER
concurred.

MORTENSEN, Judge:

¶1      In this condemnation action, the Utah Department of
Transportation (UDOT) attempted to convince the trial court
that a piece of property was nearly worthless dirt. The trial court
thought more of the property, and UDOT appeals. We affirm.

BACKGROUND

¶2     UDOT filed a condemnation action to acquire a strip of land that crossed property owned by LEJ Investments LLC, Robert Bowman Consulting LLC, Craig Jensen, Richard Jensen, Carol Bowman, and Robert Bowman (collectively, LEJ). UDOT sought to obtain the land to construct a new freeway, the Mountain View Corridor (the MVC), on the west side of Salt Lake County. When the parties could not agree on the fair market value of the property, UDOT served LEJ with a complaint, establishing the date on which the trial court was to base its determinations of fair market value and severance damages.

¶3     At trial, UDOT and LEJ presented differing appraisal values for the property. UDOT depicted the property as "a 353-acre vacant dry farm" with "no streets accessing the interior of the property" and with "antelope still roam[ing] the area." LEJ depicted the property as a budding real-estate investment with immediate potential for mixed-use development. During trial, the mayor of West Jordan City (the City) testified that the mixed-use development plans were consistent with the City's plans for the area, even without the MVC. A real estate developer also testified that there was sufficient demand as of the valuation date to develop the LEJ property for mixed use, even in the absence of the MVC.

¶4     The trial court reviewed appraisals from each party and ultimately rejected both valuations. The court concluded, "Neither side offered a backup or alternative valuation for the court to look to for guidance, opting instead to go for broke with the value conclusions each had in hand. Under these circumstances, the court has no choice but to construct its own before-condition valuation, as best it can under the circumstances, and with all the limitations presented." The court

ultimately awarded LEJ approximately $13 million in just compensation for the property.

¶5     After the trial court entered a final judgment, UDOT learned that LEJ had not supplemented its discovery responses prior to trial with information regarding actual development proposals for portions of the LEJ property. UDOT moved for a new trial, asking the court to compel production of documents and reopen discovery. The trial court granted the motion in part, requiring LEJ to supplement its discovery responses with unproduced documents and scheduling an additional day of trial. The trial court denied UDOT's request to conduct additional discovery and quashed the subpoenas UDOT's counsel had issued to consultants whom LEJ engaged in an effort to gain municipal development approvals during the time leading up to trial. After receiving additional evidence during the added day of trial, the trial court declined to amend its prior ruling.

¶6     UDOT appeals.

ISSUES AND STANDARDS OF REVIEW

¶7     UDOT raises various challenges to the trial court's final order. Where UDOT challenges the court's application of the law, we review such conclusions for correctness. *See AmericanWest Bank v. Kellin*, 2015 UT App 300, ¶ 11, 364 P.3d 1055. Where UDOT's arguments challenge the court's factual findings, we review for clear error. *Id.* Finally, we review the court's decision to partially reopen trial and discovery for an abuse of discretion. *See Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2013 UT App 146, ¶ 3, 305 P.3d 171; *Clissold v. Clissold*, 519 P.2d 241, 242 (Utah 1974), *overruled on other grounds by St. Pierre v. Edmonds*, 645 P.2d 615 (Utah 1982).

ANALYSIS

¶8    UDOT contends that the trial court erred in four ways. First, UDOT argues that the trial court misapplied the project-influence rule by relying on developments and comparable properties that existed after the MVC project began. Second, UDOT argues that the trial court's conclusions regarding the after-condemnation value of the property and severance damages were clearly erroneous, legally incorrect, and internally inconsistent. Third, UDOT argues that the trial court did not hold LEJ to the appropriate burden of proof when it rejected LEJ's expert's appraisal but proceeded to complete a fair market evaluation. Fourth, UDOT argues that the trial court erred in refusing to allow UDOT to conduct additional discovery when it partially granted UDOT's motion for a new trial. We analyze these arguments in turn.

I. The Project-Influence Rule

¶9    We first examine UDOT's argument that the trial court misapplied the project-influence rule because it did not exclude increases to the value of LEJ's property attributable to the construction of the MVC. UDOT specifically argues that (1) the court should have excluded value increases resulting from development patterns that occurred after the MVC was announced, (2) the court's highest and best use conclusion wrongly incorporated the influence of the MVC, and (3) the court erroneously relied on comparable properties, influenced by the MVC, that did not exist on the valuation date. Because evidence was presented at trial showing that the development the court considered would have happened regardless of the construction of the MVC, we conclude that the court did not misapply the project-influence rule.

¶10    In a condemnation proceeding, the factfinder must determine the fair market value of the condemned property. *See*

Utah Code Ann. § 78B-6-511(1) (LexisNexis Supp. 2018); *Thorsen v. Johnson*, 745 P.2d 1243, 1246 (Utah 1987).[1] Our courts have developed a rule, referred to as the project-influence rule in these proceedings, to ensure that "any enhancement or decrease in value attributable to the purpose for which the property is being condemned shall be excluded in determining the fair market value of the property." *Redevelopment Agency of Salt Lake City v. Grutter*, 734 P.2d 434, 437 (Utah 1986).

¶11    UDOT concedes that the trial court recognized the project-influence rule while making its ruling. Indeed, the trial court articulated its task well when it stated,

> [T]he court must construct a hypothetical world as of February 1, 2011, in which it assumes the MVC Project never existed. To do that, the court must reach back even further, to 2003, assume the project never existed, and then project forward what [the] real estate development world would have looked like in the relevant market during the period from 2003 to 2011 had the MVC Project never existed.

However, UDOT argues that the trial court failed to apply the rule properly. We disagree.

¶12    Ample evidence existed on the record for the trial court to conclude that the area would have been developed even without the MVC project. For example, the trial court found, and UDOT does not challenge the finding, that UDOT's expert arrived at his valuation conclusion by looking only to the City's general plan for the year 2003—before the MVC was announced. What that

---

1. Because the statutory provisions in effect at the relevant time do not differ in any material way from those now in effect, we cite the current version of the Utah Code for convenience.

assessment ignores is the development that would have occurred in the absence of the MVC project's influence between 2003 and the valuation date for the LEJ property in 2011. But it was the trial court's duty to predict what development would likely have occurred and, by comparison, what the value of the LEJ property would likely have been had the MVC never been announced.

¶13 The trial court justifiably relied on two pieces of compelling evidence showing that the development of the area surrounding the LEJ property would have happened regardless of the MVC. First, the City's mayor testified that LEJ's plans for commercial and residential development were consistent with the City's plans for the area with or without the MVC. A year or two before the lawsuit, LEJ began working with the City to create a plan for mixed-use development. The mayor testified that those plans were consistent with the City's plans. The mayor highlighted her desire to encourage mixed-use development in the area and specifically testified that none of these plans were contingent on the construction of the MVC.

¶14 Second, the trial court heard testimony from "a well-known and well respected local real estate developer familiar with development properties along the western portion of the Salt Lake Valley." The developer testified that there was sufficient market demand as of the valuation date, even in the absence of the MVC, to make the uses proposed in LEJ's plan[2] financially feasible.

¶15 It was within the trial court's discretion to find the mayor's testimony and the real estate developer's testimony credible. Under that framework, the court could rely on

---

2. LEJ's proposed uses include residential housing at various densities, commercial development, and an office park.

development patterns that occurred or comparable properties that were built after the MVC was announced because those developments would likely have happened anyway. Thus, the trial court did not error (1) when it relied on increases resulting from development patterns that occurred after the MVC was announced, (2) in its highest and best use conclusion, and (3) in its reliance on comparable properties built in the shadow of MVC. We perceive no error in the trial court's application of the project-influence rule.

## II. Severance Damages

¶16    Next, UDOT argues that the trial court's calculation of severance damages was "clearly erroneous, legally incorrect, and internally inconsistent." We conclude that UDOT invited any alleged error of which it now complains.

¶17    In a takings action where the property condemned constitutes only a part of the property, a court also determines damages to the part of the property not actually taken. *See* Utah Code Ann. § 78B-6-511(1)(b) (LexisNexis Supp. 2018). "The cardinal and well-recognized rule as to the measure of damages to property not actually taken but affected by condemnation is the difference in market value of the property before and after the taking." *Salt Lake County Cottonwood Sanitary Dist. v. Toone*, 357 P.2d 486, 488 (Utah 1960).

¶18    In its effort to determine the value of the property and to establish severance damages, the trial court stated that neither side's appraisals and conclusions were reliable, but the trial court nevertheless employed the "material and testimony from two appraisals" to arrive at its conclusion. During trial, UDOT endorsed this approach:

> Your Honor, as the fact finder you are allowed to decide the case based on what you think the most

reasonable value of the property is, weigh all of the evidence from both appraisers and decide a value, but it's not an either/or question. It's somewhere in the middle. . . . [Y]ou could pick some portions from one appraiser's conclusions, you could pick some conclusions from another appraiser's opinions. . . . You are allowed to arrive at a range in between what the experts say based on the evidence . . . .

UDOT now argues on appeal that the trial court's ruling on severance damages was erroneous because the court "did not explain how [the experts'] value conclusion[s], rejected as unreliable, could nonetheless support a range of values for its severance damage conclusion." UDOT essentially argues that because the trial court did not adopt either expert's appraisal, it could not rely on either expert's appraisal.

¶19   Although the trial court failed to provide a detailed calculus explaining how it arrived at its adjustment value, it explained why it could not provide such a mathematically precise calculus. The court noted that "the appraisal experts . . . make much more sweeping percentage adjustments to comparable sales with little to no explanation." UDOT does not argue any facts upon which the court should have relied or explain what the trial court should have done with the evidence that was presented to it to avoid error. Under these circumstances, we are inclined to conclude that the trial court did not err. *Cf. Utah Dep't of Transp. v. Target Corp.*, 2018 UT App 24, ¶ 40, 414 P.3d 1080 (concluding that claimants in a condemnation action were not required to "present their severance damages on a line-item basis" but could "present their severance damages evidence in a more general way") *cert. granted*, 425 P.3d 800 (Utah 2018); *see also Macris v. Sevea Int'l, Inc.*, 2013 UT App 176, ¶ 35, 307 P.3d 625 ("Although damages may not be determined by speculation or guesswork, evidence

allowing a just and reasonable estimate of the damages based on relevant data is sufficient." (cleaned up)).

¶20 Even assuming that the trial court erred, UDOT invited the trial court to analyze the issue in the manner that it now complains was erroneous. "Under the doctrine of invited error, an error is invited when counsel encourages the trial court to make an erroneous ruling." *State v. McNeil*, 2016 UT 3, ¶ 17, 365 P.3d 699. Thus, a party cannot "intentionally mislead[] the trial court so as to preserve a hidden ground for reversal on appeal." *Id.* (cleaned up). Here, UDOT invited the trial court to "arrive at a range in between what the experts say based on the evidence." We therefore reject UDOT's argument that the court erred in doing exactly what UDOT urged it to do.

### III. The Burden of Proof at Trial

¶21 UDOT next contends that the trial court failed to hold LEJ to the correct burden to prove its damages when it did not adopt LEJ's expert's opinion. UDOT argues that when the trial court rejected LEJ's expert's conclusion, it should have ordered just compensation in the amount that UDOT proffered or, in the alternative, the trial court should have ordered a new trial. We disagree and further conclude that UDOT invited any alleged error.

¶22 UDOT correctly posits that "[t]he burden of showing the damages which the owner will suffer rests on him." *Tanner v. Provo Bench Canal & Irrigation Co.*, 121 P. 584, 589 (Utah 1911) (cleaned up). But UDOT fails to apply this principle in its argument correctly. "It is well settled that, although the plaintiff has the burden of proving the fact, causation, and amount of damages, he need only do so with reasonable certainty rather than with absolute precision." *Macris v. Sevea Int'l, Inc.*, 2013 UT App 176, ¶ 35, 307 P.3d 625 (cleaned up). Thus, LEJ's burden was not to prove damages with exact certainty, but to "produce a

sufficient evidentiary basis to establish the fact of damages and to permit the trier of fact to determine with reasonable certainty the amount" of damages. *Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986) (per curiam).

¶23    Here, while the trial court did not adopt either expert's appraisals, it also did not outright reject them.[3] The trial court stated that it "agrees and disagrees with both parties' experts." The fact that the trial court did not follow either expert to their respective conclusions does not render the court unable to rely on any portion of the experts' testimony. *See Tucker v. Tucker*, 910 P.2d 1209, 1216 (Utah 1996) ("[T]he trial court, as trier of fact, [is] entitled to weigh the evidence and reject all or part of any witness's testimony, even that of an expert." (cleaned up)).

¶24    The trial court explained that LEJ's expert "did a better job of identifying the highest and best use of the property in the before condition, but the mechanism he used to calculate LEJ's damages is not reliable and the result appears to overstate the value of the property." The court "likewise accept[ed] and reject[ed] portions of the expert's opinions of value in the after condition," where "UDOT's experts seriously understate[d] the access problems created by the alignment of the MVC." We conclude that LEJ presented evidence of its damages, at least some of which the court found to be credible, and that LEJ satisfied its burden to the extent that the trial court could rule on LEJ's damages stemming from the condemnation. *See Utah Dep't*

---

3. The trial court acknowledged that while neither appraisal was entirely reliable, the appraisals still informed the court's determination: "[A]s far as the value of the property in the before condition, the court is left with the unenviable task of trying to determine the fair market value of the property with material and testimony from two appraisals, neither of which correctly addressed the issue at hand."

*of Transp. v. Jones,* 694 P.2d 1031, 1033 (Utah 1984) ("In eminent domain cases, absent a showing of passion and prejudice, if the award of compensation was within the estimate of value given by one of the expert witnesses, it is supported by competent evidence and will be affirmed."); *State ex rel. Road Comm'n v. Taggart,* 430 P.2d 167, 169 (Utah 1967) ("The finding of the jury in respect to severance or consequential damage was within the range of the testimony upon that subject matter. We are of the opinion that there is a reasonable basis in the evidence for the finding of the jury in respect to damages and that the trial court did not abuse its discretion in denying the defendant's motion for a new trial on that basis.").[4]

¶25    Second, we again note that UDOT encouraged the trial court to rule based on the range of values presented by the experts. Even if it were error for the court to make a ruling on the range of values given, we would reject UDOT's argument under the invited error doctrine. *See State v. McNeil*, 2016 UT 3, ¶ 17, 365 P.3d 699.

### IV. The Denied Request for Additional Discovery

¶26    Finally, UDOT argues that the trial court abused its discretion in refusing to allow additional discovery regarding plans to develop the remainder of the property. UDOT has not persuaded us that the court abused its discretion.

---

4. *See also City of North Las Vegas v. 5th & Centennial, LLC*, Nos. 58530, 59162, 2014 WL 1226443, at *4 (Nev. March 21, 2014) (holding that, where "the district court rejected all expert testimony relevant to damages and created its own arbitrary methodology," the court did not abuse its discretion where the calculation of damages was within the range set by the experts and based on the evidence it heard).

¶27    A trial court does not abuse its discretion "if a reasonable basis for its decision is apparent from the record." *Johnston v. Labor Comm'n*, 2013 UT App 179, ¶ 15, 307 P.3d 615. But UDOT attempts to construe our holding in *Sleepy Holdings LLC v. Mountain West Title*, 2016 UT App 62, 370 P.3d 963, to essentially mean that any time a court rules that a party may not conduct a deposition, that party is prejudiced. We do not follow UDOT to this conclusion.

¶28    In *Sleepy Holdings*, we examined a trial court's imposition of discovery sanctions. *Id.* ¶ 9. There, we determined that Mountain West was prejudiced by Sleepy Holdings' late supplementation because "had the deposition suggested additional avenues of discovery, Mountain West would be at a disadvantage in exploring them, as the discovery cutoff had by that time passed." *Id.* ¶ 27.

¶29    Here, we do not examine the trial court's imposition of discovery sanctions. Instead, we review the trial court's partial grant of UDOT's motion for additional discovery and a new trial. We are therefore unconvinced that our holding in *Sleepy Holdings*, which deals specifically with *discovery sanctions*, binds us to conclude that, when ruling on a *motion to reopen discovery and for a new trial*, a trial court must completely reopen discovery when potentially new evidence is discovered.

¶30    To the contrary, when a party moves for a new trial based on newly discovered evidence, as UDOT did here, the party must demonstrate that the evidence is "of sufficient substance that with it there is a reasonable likelihood that there would have been a different result." *In re L.M.*, 2003 UT App 75, ¶ 8, 68 P.3d 276 (cleaned up). UDOT has not explained why additional discovery, beyond what the trial court allowed, was necessary. UDOT's only assertion of prejudice is its inability to "fully develop[] the facts it needed to present its case." It makes no attempt to describe what those "needed" facts might be, or why

they were needed. Given that the trial court partially granted the motion, ordered the production of documents, and even heard an additional day of testimony where new witnesses were called, we are hard-pressed to conclude that the court abused its discretion. Because UDOT "has not adequately explained why additional discovery was needed," we reject its argument. *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2013 UT App 146, ¶ 9, 305 P.3d 171.

CONCLUSION

¶31 UDOT's challenge to the trial court's final order fails. UDOT's argument that the trial court misapplied the project-influence rule fails because there was ample evidence on the record that the improvements and development upon which the court based its determination would have occurred even without the MVC project. UDOT's argument that the court erred in calculating severance damages also fails because UDOT invited any error of which it now complains. UDOT's argument that the trial court failed to apply the proper burden of proof is without merit. LEJ presented enough evidence to carry its burden, and any error the trial court may have made was invited by UDOT. Finally, UDOT's argument that the trial court abused its discretion by not reopening discovery and not granting a new trial fails because UDOT did not explain why additional evidence was necessary.

¶32 Affirmed.

_____